## BELNAP v. FOX et al.

No. 4349.   Decided August 4, 1926.   Rehearing Denied January 8, 1927.   (251 P. 1073.)

16

*Hyrum A. Belnap,* of Ogden, for appellant.

*John A. Sneddon,* of Ogden, for respondents.

STRAUP, J.

This action was originally commenced in the city court by the appellant to recover rent and for restitution of premises. He had judgment against the defendants and respondents in the sum of $157.50. The defendants prosecuted an appeal to the district court. There the case was tried de novo to the court without a jury, and a judgment rendered in favor of the appellant in the sum of only $44.50. From that judgment, the appellant prosecuted this appeal.

He complains of some of the findings as being against the evidence; of uncertainties and indefiniteness as to others; and a failure to find on some of the material issues.

The appellant was constructing or reconstructing a building in Ogden. Before it was completed, he, in January, 1924, orally leased the front portion of the building to the defendants for the purpose of a garage, at a monthly rental of $50. On February 5th, that portion of the building was ready for occupancy, and then was entered and occupied under the lease by the defendants to carry on their business. That is admitted. He also shortly thereafter verbally leased to the defendants the rear of or an addition to the building as soon as it was ready for occupancy; and, as claimed by the appellant, that portion of the building was ready for

occupancy on May 20, 1924, and that the defendants then entered, possessed, and used that portion of the building in carrying on their business until they vacated the whole of the premises. Both of the defendants admit the leasing and the occupancy of the front portion of the building; and the principal defendant, by his answer, also admitted leasing the back portion or the addition as soon as it was ready for use and occupancy, but denied that that portion of the building was completed or that any part of it was occupied or used by the defendants.

On July 14, 1924, the appellant served a written notice on the defendants therein, stating the amount of rent then due and unpaid to be $100; that $7.50 was due for water rent; claimed $65 damages done to the doors of the building; terminated the lease on the whole of the building to take effect August 1, 1924; and notified the defendants to yield and deliver up the premises to the apellant on that day, and that the rent of the building would be $10 a day for each and every day it was occupied by the defendants on and after August 1, 1924; and, in case the defendants failed to do so, suit would be instituted against them for the rent and for treble damages. Service of the notice on the defendants on July 14 was admitted. No objection or reply to the notice was made, nor was there any claim made that the appellant did not have the right to terminate the lease or demand possession of the premises as was done, but the defendants, in silence, remained and continued in possession of the premises until August 15, 1924, when they vacated them, and made no claim that they, until then, or at any time after August 1, 1924, had any right to the possession of the premises or any part thereof.

The court found that in January, 1924, the appellant leased the premises to the respondents (exclusive of the rear or addition) at a monthly rental of $50, and that the respondents took possession thereof under the lease on February 5, 1924, and paid the monthly rental thereafter up to and including August 5, 1924. The court further found:

"(2) That thereafter negotiations were had between said parties for plaintiff to add an addition to the rear of said premises which were to be rented by the defendants, but the court finds that no agreement or lease for the renting of said premises was ever made, and that the defendants refused to enter into a lease for the same.

"(3) The court finds that on July 14, 1924, the plaintiff gave defendants notice terminating said lease on August 1, 1924, that the defendants continued to occupy said premises until August 15, 1924, and that at said last-mentioned date there had accrued and was owing by defendants to plaintiff $50 for rent.

"(4) That the defendants agreed to pay the water rent upon said premises, amounting to $7.50, which the court finds is due from them to plaintiff.

"(5) The court finds there was no evidence introduced to sustain the fourth cause of action of plaintiff's complaint, and the court finds in favor of the defendants on said issues.

"(6) The court finds that the plaintiff agreed to repay to the defendants the cost of removing rubbish from in front of said leased premises, and that the same was removed by the defendants and the cost thereof was $13, which was the reasonable value thereof.

"(7) The court finds no valid agreement was ever made changing the terms of the lease referred to in finding No. 1.

"(8) The court finds the value of the rents after August 5, 1924, amounted to $16.67, and that the defendants are entitled to have deducted therefrom the sum of $13 due on their counterclaim, and that plaintiff should recover $7.50 for water rent."

The only conclusion of law stated by the court was that the appellant was entitled to judgment in the sum of $44.50 and costs in the city court, and such a judgment was accordingly entered. Finding No. 2, that no agreement or lease was entered into as to the rear or addition to the building is against and in conflict with the admission in the answer of the principal defendant (he claimed to be the sole lessee), and for such reason cannot stand. What in such respect divided the parties was not that no lease or agreement was entered into, but whether such portion of the building was occupied and used by the defendants. Much evidence was given by the appellant that

such portion of the building was occupied and used by the defendants from May 20 to August 15, 1924, in carrying on their business. The defendants gave some evidence to the contrary, though quite unsatisfactory, yet perhaps sufficient to raise a conflict. The court as to that ought to have made a finding, which it did not do. The court did not allow anything by way of rental for such portion of the building. The city court did. A finding ought to have been made on the subject, and, if the fact be found as contended by appellant, he was entitled to an allowance of rent in accordance with the lease, as alleged and admitted. The court also made a finding that no evidence was given to support the allegation as to the damages to the door. We think the court erred in such respect. The appellant gave evidence to show that the door was damaged to the extent of from $15 to $20. The defendants gave evidence to the contrary; that is, that while the door was injured, that it was not injured by them or either of them. While the matter is small, nevertheless the court was required to find what the fact was, instead of finding that there was no evidence to support the allegation.

It is somewhat difficult to reconcile finding No. 3 with finding No. 8. In finding No. 3 the court found that the rent which had accrued on August 15, 1924, was $50. Such finding may be on theory that, though the lease was terminated, yet, since the defendants thereafter occupied the premises for a portion of the month, they were liable for the whole month at the rate of 50 a month as provided by the lease, and allowing appellant, in addition thereto, $7.50 for water rent and deducting therefrom $13 due the defendants for removing the rubbish, left $44.50, for which amount the court rendered judgment in favor of the appellant. Finding No. 8 may be on the theory that, since the lease was terminated, the defendants were not liable for rent under the lease, but only for the "value of the rents," which was stated to be $16.67, and trebling that is $50, and adding the $7.50 water rent and deducting from

such amount the $13 due defendants for removing the rubbish, again is $44.50. But we do not know that the court trebled the rent in such or in any particular. Looking at finding No. 3, where the court found that $50 rent "had accrued" August 15, 1924, it would seem that the rent was not trebled. And looking at finding No. 8, if the rent was not trebled, then the amount of rent found was only $16.67. The whole matter, as found, is incongruous and uncertain. While the court found that the appellant, by his notice, terminated the lease on August 1, 1924, and that thereafter the defendants continued to occupy the premises until August 15th, yet, so far as appears from the findings and conclusions, no consideration is given the statement in the notice that the rent on and after August 1st would be $10 a day. Because of the served notice and because of his pleadings, the appellant contended that he, on and after August 1st and until August 15th, when the defendants vacated the premises, was entitled to rent at the rate of $10 a day; but, as we look at the findings, conclusions, and judgment, such claim is wholly disregarded.

Complaint is made of that. In such particular appellant contends that by the service of his notice terminating the lease to take effect August 1st, requiring the defendants then to yield and deliver up the premises, notifying them that the rent thereafter would be $10 a day, the defendants making no objection or reply, but silently continued in possession thereafter, and making no claim that the appellant had no right to terminate the lease or that the defendants had any right thereafter to continue or remain in possession of the premises, it must be conclusively presumed that the defendants, by so continuing in possession, acquiesced in such increased rentals, and therefore the appellant was entitled to recover as rentals for such period of 15 days at the rate of $10 a day, or the sum of $150. We think that under the stated circumstances, the contention is well founded. In 1 Underhill, Landlord and Tenant, § 99, the author says:

"The presumption that a tenant holding over with the consent of the landlord is a tenant at will, or from year to year, as the case may be, upon the same terms so far as the amount of rent is concerned as he had under the original lease is conclusively rebutted if it is shown that a new agreement was made to pay an advanced rental during the holding over. And if either after or prior to the termination of the lease the landlord informs the tenant that in case he holds over after the expiration of an existing term a greater rent will be expected from him than he has paid under the original lease, and the tenant holds over without saying anything in reply to the landlord's demand or notice for an advanced rent, his continuing in possession taken in connection with his silence will be regarded as an assent on his part to pay the advanced rental. * * * The tenant's conduct in continuing in possession after notice by the landlord is an acceptance of the landlord's proposition."

The same doctrine is stated in 18 A. & Enc. Law, 200. A well considered case on the subject is the case of *Williams* v. *Foss-Armstrong Hdw. Co.*, 135 Wis. 280, 115 N. W. 803. In the case of Berryman v. Gibson, 7 Cal. App. 679, 95 P. 671, the Court of Appeals of California said:

"He [the lessor] had the right to change the terms of defendant's monthly tenancy, or to terminate it. He served notice" of increasing the rent from $40 to $150 per month "twenty days before the expiration of the month. Defendant, of his own volition, remained in possession, and he must suffer the penalty."

In *Higgins* v. *Halligan*, 46 Ill. 173, the court said that, the lessee not objecting to the notice, but continuing in possession:

"No argument or authority is needed to show the extent of his liability under such circumstances. The inference is irresistible that he was content to hold at the increased rent, and his assent thereto will be implied."

In the case of *Scully* v. *Roche*, 76 Misc. Rep. 458, 135 N. Y. S. 633, the court said that:

"Where a tenant holding over has notice from the landlord that if he retains possession he must pay a higher rent, he must be deemed to assent to pay the increased rent, and cannot hold the premises after such notice and fix his own terms for rent."

To the same general effect are the cases of *Moore* v. *Harter*, 67 Ohio St. 250, 65 N. E. 883; *Thompson* v. *Sanborn*, 52 Mich. 141, 17 N. W. 730; and *Semansky* v. *Archibald* (Sup.) 126 N. Y. S. 385.

All that the respondents say with respect to this proposition is:

"It is folly for plaintiff to claim that, pursuant to the notice of July 14, 1924, defendants' rent was $10 per day after August 1, 1924. Landlords cannot arbitrarily do that."

—and cite only *Atkinson* v. *Cole*, 16 Colo. 83, 26 P. 815. But that case does not help them. There, as appears by the opinion, was a bona fide dispute between the parties as to the length of the term, and the lessee protested against the increased rent as soon as he received notice. The court said:

"Had Atkinson [the lessee] remained silent after receiving notice of the attempted increase of rent, then a promise on his part to pay the same might have been implied. He did not do this, however, but promptly communicated his protest against any such change."

Here no objection or protest whatever was made, nor is any claim made that the notice was not served timely or that it was in any way particularly defective or insufficient, nor is there any claim made that the appellant had not the right to terminate the lease on August 1st, or that the defendants had any right to remain in possession of the premises thereafter.

We thus are of the opinion that the court ought to have considered and regarded this proposition, and made findings and conclusions with respect to it, which was not done. Of course, in such view of the case, the appellant was not entitled to treble the rent as damages. He was entitled to whatever rentals, in accordance with the lease, that ▮ were due and unpaid on the premises, both the front and the rear portion thereof, if found that the defendants occupied and used the rear, as claimed by the appellant, up

to August 1, 1924, and after that a rental at the rate of $10 per day until August 15th, when the defendants vacated the premises and surrendered them up, $7.50 for water rent, and the amount of whatever damages, if any, the defendants did to the doors of the building. Against whatever amount so found should be deducted the $13 due the defendants for removing the rubbish.

The judgment of the court below is therefore reversed and vacated, and the cause remanded for a new trial. Costs to appellant.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.

On Application for Rehearing.

STRAUP, J.

A petition for rehearing is filed, chiefly on the ground that we did not dispose of the respondents' motion to dismiss the appeal. Not anything in the opinion is said concering such a motion, and it also is true, as is contended, that we did not consider nor pass on such a question. The reason of it is that, while a motion to dismiss was on file, our attention was not called to it. The motion is not contained nor is there any reference made to it in the abstract; nor is there any reference made to it in the briefs of counsel. However, since the claim is made that the matter is jurisdictional, we now look at it.

Our statute (Comp. Laws Utah, 1917, § 7326) provides that from a judgment of forcible entry and unlawful detainer an appeal must be taken within 10 days ■ from rendition of the judgment. The appeal was not taken within such time, and hence the motion to dismiss it.

The plaintiff commenced the action in the city court along the last of July or the first of August, 1924, to recover from the defendants for rents due and unpaid and for restitution of the premises. The defendants appeared in the action and

on August 4th filed a demurrer. Thereafter an amended complaint was filed and an answer, but before the amended complaint and answer were filed, the defendants, on August 15 or 16, 1924, vacated the premises and surrendered the possession of them to plaintiff. So when the case was tried in the city court in December, 1924, the only issue tried was the amount of rent due and unpaid. That very clearly is made to appear by the findings and conclusions made by the city court and the judgment therein rendered. The judgment of that court was that the plaintiff was entitled to recover from the defendants the sum of $157.50 and interest, the amount of rent which the court found due and unpaid, together with costs taxed at $38.70. That judgment was rendered December 23, 1924, and notice thereof given the same day, and was entered December 24, 1924. From that judgment the defendants appealed to the district court. It is very clear that the judgment rendered in the city court was merely a money judgment. The undertaking on appeal, both as to costs and a stay of proceedings, was in the usual form of an appeal from a money judgment. The case, as tried in the district court, involved, as is clearly shown by the findings and conclusions therein made, only the amount of rent due and unpaid. And the judgment, as rendered by the district court, was merely a money judgment that the plaintiff recover from the defendants the sum of $44.50, interest and costs, and nothing else. It is from that judgment that this appeal is prosecuted. Because of the surrender of the premises by the defendants to the plaintiff before the trial of the case even in the city court, the question of restitution no longer remained an issue, and no such issue was tried or determined in either the city court or in the district court. Hence, in view of our holding in the case of Dunbar v. Hansen (Utah) 250 P. 982, and the appeal here being merely from a money judgment, the forcible entry and unlawful detainer statute requiring an appeal within 10 days from the rendition of the judgment is not applicable, but the appeal is controlled by the general

26

appeal statute requiring an appeal to be taken within 6 months from the entry of judgment. The appeal was taken within that time. The petition for rehearing is therefore denied. It is so ordered.