DR. FLORENCE CHINN LOUI v. PATRICIA OAKLEY.

No. 4568.

MARCH 1, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY LEVINSON, J.

This case presents the novel question whether a plaintiff injured in a series of automobile accidents, occurring months and years apart, may recover from the first tort-feasor damages resulting from all the accidents if the jury is unable, by a preponderance of the evidence, to apportion the damages among the various accidents.

The accident for which the defendant-appellant was responsible occurred on August 4, 1961. Before this case went to trial, the plaintiff-appellee was involved in three additional accidents on February 11, 1962, November 16, 1962, and January 4, 1965. Most of the injuries she sustained in the second, third, and fourth accidents involved the same area of her body injured in the first accident.

The only issue contested at the trial was the amount of damages caused by the defendant's negligence. The trial court instructed the jury as follows: the plaintiff has the burden of proving her claim by a preponderance of the evidence; the defendant is responsible for all natural and probable results flowing from the first accident; if the jury finds that the plaintiff''s injuries and damages from all four accidents are separable or divisible it must determine what portion resulted from the first accident for which, alone, the defendant would be liable; if the jury finds from a preponderance of the evidence that the defendant's negligent acts concurred in causing indivisible injuries, she is liable for all such injuries; if the jury finds that the injuries sustained after the second, third, and fourth accidents were proximately caused by the first accident, and that the injuries are indivisible, the defendant is liable for the damages resulting from all four accidents; and if the defendant increased the plaintiff's susceptibility to injury, the defendant is liable for subsequent injury if the increased susceptibility concurred in or contributed to the subsequent injury. The court read an additional instruction relating to divisibility, reiterating the points set out above. The jury found the defendant liable for $60,000 general damages and $16,194 special damages.

The defendant alleges several errors, but they all involve the identical issue: whether a tort-feasor may be held liable for subsequent injuries to the same area of the body which he injured if the injured party is unable to prove by a preponderance of the evidence precisely how much of the injuries the tort-feasor caused. We hold that the trial court erred in instructing the jury that the defendant would be liable for all the damages from all four accidents if the jury could not determine by a preponderance of the evidence how much resulted from the first accident.

Determining the extent of damages for which the defendant should answer is *not* a question of causality in the strict sense but rather a question of policy.[1] We realize that many courts

---

[1]Many commentators have advocated the need to recognize that policy, and not rules of causality, determines the extent of a defendant's liability.

A few aphorisms reflecting tendencies (stronger or weaker, according to

purport to resolve the question of the extent of damages for which a defendant will be held liable by reference to various standards clothed in the raiments of causality. But we do not believe that the proper resolution of the conflicting interests involved in this case is facilitated by invoking the talismanic term "proximate cause". It is no less true today than it was 63 years ago when Mr. Justice Holmes concluded:

> General propositions do not decide concrete cases. The decision will depend on a judgment or intuition more subtle than any articulate major premise. *Lochner* v. *New York*, 198 U.S. 45, 76 (1905) (dissenting).

This is not to deny that there is a rather vague overall frame of reference which limits the outermost region of damages assignable to a particular accident. It is simply a recognition that resolution of the competing interests involved in this case depends more on an examination of "[t]he felt necessities of the time, the prevalent moral and political theories, intuitions of public policy," than on a label used to justify a result. Holmes, *The Common Law* 1 (1881).

Each party advocates an extreme position. On the one hand, the plaintiff urges us to adopt a rule which permits the first in a series of defendants to be charged with the entire loss the plaintiff sustained as the result of accidents, spaced months and even

---

the types of situations involved) to limit responsibility according to general ideas of remoteness of consequences may aid the judge in orienting a particular problem, but seemingly a method of analysis is best which will focus the judge's attention primarily upon the particular situation, *the nature of the interest asserted, the extent and purpose of the protection which the courts have given to that interest, and whether the present injury properly falls within the range of protection.* McCormick, *Damages* 268 (1935) (emphasis added).

As distinguished from the question whether the defendant's act has been a substantial factor in causing the accident, the question of the extent of liability

involves the quite separate and far more delicate question of how far society should go in requiring the defendant to pay for damages which his conduct has in fact been a substantial factor in producing. . . . The proper solution calls for minds trained in the working out of rules of law *which will reduce social friction to a minimum.* Eldredge, *Culpable Intervention as Superseding Cause,* 86 U. of Penn. L. Rev. 121, 122 (1937) (emphasis added).

*See also,* Green, *The Causal Relation Issue in Negligence Law,* 60 Mich. L. Rev. 543 (1962).

years apart, where the plaintiff is unable to prove the amount of the damages attributable solely to the first defendant. Under that theory, adopted by the trial court, a plaintiff is required to prove only the total damages from all the accidents and that apportionment is impossible. As the plaintiff's attorney acknowledged in oral argument, the adoption of such a theory could result in multiple suits and multiple recoveries. On the other hand, the defendant advocates a rule denying a plaintiff any relief unless the plaintiff can establish by a preponderance of the evidence the precise damages attributable to the defendant's negligence.

The plaintiff's approach substantially ignores the fault theory on which the law of negligence is based.[2] Under the fault theory, we are committed to the proposition that "a law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear." Holmes, *The Common Law* 50 (1881). By the same token, a law requiring a person to pay damages greatly disproportionate to the injury inflicted would be contrary to the concept of fairness implicit in the fault theory. The defendant's approach

> would lead to the even more unlovely spectacle of turning a plaintiff away without redress although he has shown that he has suffered some damage at the hands of *each* of several defendant wrongdoers and what the aggregage amount of the damages comes to. 2 Harper & James, *The Law of Torts* 1128 (1956).

In deciding this case, we must steer a careful course between the Scylla of denying the plaintiff any remedy and the Charybdis of imposing on one defendant all the damages, at least some

---

[2]Although the fault theory of liability is currently under attack and, at some future date, may give way to the enterprise theory of liability, the fault theory represents

psychological maturity far beyond the undirected and unlimited revenge, the "eye for eye and tooth for tooth" of her [society's] early days. Through a long and painful process we have come to give ever increasing *consideration to the comparative equities of the parties.* Ehrenzweig, *A Psychoanalysis of Negligence,* 47 Nw. U. L. Rev. 855, 856 (1953) (emphasis added).

of which would not have occurred without the independent acts of other persons.

We hold that the proper procedure is for the trial court to instruct the jury that if it is unable to determine by a preponderance of the evidence how much of the plaintiff's damages can be attributed to the defendant's negligence, it may make a rough apportionment. Heretofore, this court has recognized that

> the law never insists upon a higher degree of certainty as to the amount of damages than the nature of the case admits, and that where, as here, the fact of damage is established, a more liberal rule is allowed in determining the amount. *Coney* v. *Lihue Plantation Co.,* 39 Haw. 129, 139 (1951).

*See also, Ah Quai* v. *Puuki,* 11 Haw. 158 (1897).[3]

Inherent in such a lessening of the burden of proof is the assumption that both parties will be permitted to introduce all relevant evidence pertaining to all the accidents even though all the alleged tort-feasors may not be before the court in the same action. We recognize that the probative value of evidence, such as the comparative damage to the plaintiff's car after the various accidents, may be weak. Nevertheless, where the plaintiff interjects into the case the question of indivisibility, the trial court must consider this additional factor in determining whether to admit evidence with relatively little probative value.

The trial court should instruct the jury that if it is unable to make even a rough apportionment, it must apportion the damages equally among the various accidents.[4] We recognize that this resolution is arbitrary. It is, however, no less arbitrary than placing the entire loss on one defendant.

In apportioning the damages, each accident must be con-

---

[3]Even if lessening the plaintiff's burden on this issue could be regarded as a departure from well-established common law procedures, it is a step which this court can and should take. As Mr. Justice Marumoto succinctly stated:

> [T]he genius of the common law, upon which our jurisprudence is based, is its capacity for orderly growth. Lum v. Fullaway, 42 Haw. 500, 502 (1958).

*See also* Yoshizaki v. Hilo Hosp., 50 Haw. 150, 433 P.2d 220 (1967).

[4]Prosser, *Torts* 253 (3d ed. 1964). This approach has been labeled "eminently sensible". 2 Harper & James, *Law of Torts* 1131 (1956).

sidered, regardless of the possibility that the plaintiff may be unable to recover from persons involved in the other accidents because of the statute of limitations or contributory negligence.[5] Were we to hold otherwise, a plaintiff could recover for a loss sustained as a result of his own negligence in other accidents or from his own delay in bringing an action against other culpable parties.

The most desirable procedure would be for all the alleged tort-feasors to be joined in one action. This would ensure that a plaintiff will recover his full damages, neither more nor less as might result if different juries apportioned the damages for each accident. With all the defendants in one trial, the likelihood that all the evidence relevant to apportionment will be presented to the jury is greatest. Where the plaintiff sues the alleged tort-feasors in separate actions, only in exceptional circumstances should consolidation for trial be refused.

Reversed and remanded.

*Willson C. Moore, Jr. (Henshaw, Conroy & Hamilton* of counsel) for defendant-appellant.

*Wallace S. Fujiyama (Chung, Vitousek, Chuck & Fujiyama* of counsel) for plaintiff-appellee.

---

[5]Historically, the concept of contributory negligence appears to have developed as

a convenient instrument of control by which the liabilities of the rapidly growing industries were curbed and kept within bounds. Maki v. Frelk, 85 Ill. App. 2d 439, 229 N.E.2d 284, 286 (1967) .

It may be time to reconsider the applicability of the doctrine of contributory negligence, a judge-made rule, in light of the mores of the day. Perhaps it should be judicially replaced by a comparative negligence standard, as an Illinois court has done after concluding that the doctrine of contributory negligence is "unsound and unjust under present conditions", and that courts have "not only the right, but the duty to abolish the defense." Maki v. Frelk, *supra* at 452, 229 N.E.2d at 291. *See also,* Keeton, *Creative Continuity in the Law of Torts,* 75 Harv. L. Rev. 463, 506-09 (1962) .