CHRIS BACHRAN, REBECCA BACHRAN, MARI BACHRAN, TIMOTHY BACHRAN, AND GREGORY BACHRAN, INFANTS BY LORRAINE BACHRAN, THEIR MOTHER AND NEXT FRIEND, AND LORRAINE BACHRAN *v.* KAORU MORISHIGE.

No. 4790.

MAY 22, 1970.

RICHARDSON, C.J., ABE, LEVINSON, KOBAYASHI, JJ., AND CIRCUIT JUDGE WONG FOR MARUMOTO, J., DISQUALIFIED.

OPINION OF THE COURT BY ABE, J.

On March 30, 1964, while plaintiff Lorraine Bachran and her five children were in an automobile, which was stopped in a line of traffic, it was struck by an automobile driven by Kaoru Morishige. Suit was instituted by Lorraine Bachran for herself and her five minor children as plaintiffs against defendant Kaoru Morishige. The defendant admitted liability and the case was tried by a jury on the issue of damages.

This appeal is only from the judgment entered for plaintiff Lorraine Bachran on the jury's verdict for $3,500 special damages and $50,000 general damages.

The defendant on appeal presents three questions that merit consideration:

1. On the issue of apportionment of damages, whether the trial court properly ruled that the defendant was legally responsible and liable for all of the injuries to the plaintiff.

2. Whether the trial court correctly ruled that the plaintiff was entitled to damages for future or prospective pain and suffering.

3. Whether the trial court properly refused to allow a new trial for the alleged misconduct of jurors in incorrectly answering questions asked of them on voir dire examination.

## I. Apportionment of Damages

The record shows that the plaintiff, after a previous automobile collision on March 15, 1962, was treated for pain in the back of her neck by Dr. Sasaki. She had seen Dr. Sasaki on March 16, 20, 21 and 23, 1962. Dr. Sasaki testified that March 23, 1962 was the last time he saw the plaintiff concerning the neck pain she received in the 1962 accident and that he assumed "the neck pain cleared up subsequently."

A day after the March 30, 1964 collision, the plaintiff saw Dr. Sasaki and complained of "headache, pain in the neck and shoulder area." X-rays taken of her cervical spine showed no significant changes and Dr. Sasaki's diagnosis of the injury was "cervical strain." The plaintiff was under Dr. Sasaki's care for almost four months. However, as there was no improvement of her condition, on July 23, 1964, he referred her to Dr. Poulson, an orthopedic surgeon.

The record also shows that the plaintiff consulted Dr. Poulson for the first time on July 24, 1964. Thereafter, the plaintiff visited Dr. Poulson almost monthly until January 19, 1968, and she was still under his care at the time of the trial of this case. Dr. Poulson testified that the plaintiff was suffering from degenerated cervical disc and that both the 1962 and 1964 accidents were contributory causes.

On the issue of apportionment of damages, the plaintiff contends that the rule of *Kawamoto* v. *Yasutake,* 49 Haw. 42, 410 P.2d 976 (1966) is applicable and that the defendant is liable for the entire damages suffered by the plaintiff. On the other hand, the defendant argues that the rule of *Loui* v. *Oakley,* 50 Haw. 260, 438 P.2d 393 (1968) is applicable, and that the damages suffered by the plaintiff should be apportioned between the accidents of 1962 and 1964.

In *Loui* v. *Oakley, supra,* we were faced with two conflicting propositions. On one hand, the plaintiff advocated that where a person is injured in successive automobile collisions and sues the tort-feasor in the first collision and is unable to segregate the amount of damage attributable to the first collision, he should be required to prove only the total damages from all the accidents and be permitted to recover the total damages from the tort-feasor against whom the action was filed. On the other hand, the defendant contended that the plaintiff had the burden of proof and should be required to prove by a preponderance of evidence not only that the defendant was negligent, but the precise damages attributable to the defendant's negligence or be denied recovery. In such circumstances, we held that the court should instruct the jury "that if it is unable to determine by a preponderance of the evidence how much of the plaintiff's damages can be attributed to the defendant's negligence, it may make a rough apportionment", and "that if it is unable to make even a rough apportionment, it must apportion the damages equally among the various accidents." *Loui* v. *Oakley,* 50 Haw. at 264, 438 P.2d at 396-97. However, we did not hold that whenever a plaintiff is injured in more than one accident the damages should always be apportioned between the accidents.

In *Kawamoto* v. *Yasutake, supra,* we held that when a plaintiff was suffering from a pre-existing diseased condition and was injured because of the defendant's negligence, the defendant was legally responsible for the injuries suffered by the plaintiff; that it was immaterial whether the injuries were new ones or an aggravation of a pre-existing condition where the damages were not apportionable between the pre-existing condition and the new injury; and that even though a portion of the present and future disability was directly attributable to the pre-

existing condition, the defendant was responsible for the entire damages.

At first glance, the two cases above mentioned may seem to enunciate two different divergent and contradictory rules of law. However, it must be remembered that *Loui* v. *Oakley* was decided on a policy question to "steer a careful course between the Scylla of denying the plaintiff any remedy and the Charybdis of imposing on one defendant all the damages, at least some of which would not have occurred without the independent acts of other persons." 50 Haw. at 263-64, 438 P.2d at 396. It does not overrule *Kawamoto* v. *Yasutake, supra.*

The defendant cites *Loui* v. *Oakley* and argues that as the plaintiff suffered neck and back injuries in both the 1962 and 1964 accidents, the damages suffered by the plaintiff should be apportioned. This contention would be sound providing that in 1964, when the defendant's negligence injured the plaintiff, she was still suffering pain and disability from injuries she received in the 1962 accident.

On the other hand, if the plaintiff had fully recovered and was suffering no pain or disability from injuries she received in the 1962 accident, all the injuries and damages suffered by the plaintiff would be the proximate result of the 1964 accident and there should be no apportionment. *Loui* v. *Oakley* does not require apportionment in such circumstances.

We believe a fair rule is to hold that where a person has suffered injuries in a prior accident and has fully recovered, and later he is injured by the negligence of another person and the injuries suffered in the later accident bring on pain, suffering and disability, the proximate cause of the pain, suffering and disability is the negligence of that other person. In such circumstances that other person should be liable for the entire damages. *Bennett* v. *Messick,* 457 P.2d 609 (Wash. 1969).

66

Thus, in this case it was necessary first to determine whether in 1964, when the plaintiff was injured by the defendant's negligence, she had fully recovered from the injuries she suffered in the 1962 accident and was not experiencing any pain, suffering or disability. This was a factual issue which had to be determined by the jury. However, during the trial, the judge ruled that "a tortfeasor takes the man as he finds him" and that if the second accident aggravated a pre-existing condition, the defendant was liable for all of the damages, and the jury was prevented from deciding this issue. Also, the trial judge prevented the defendant's counsel from examining the witnesses as to the injuries plaintiff suffered in the 1962 accident.

If the plaintiff had not fully recovered from the injuries she suffered in the 1962 accident and in 1964 she was still experiencing pain and suffering and was disabled from such injuries, the total damages would not be the proximate result of the 1964 accident. Then *Loui* v. *Oakley, supra,* as stated above, would be applicable and the damages should be apportioned. Further, under that rule, if the jury found apportionment of the damages impossible, it could then divide the total amount of the damages resulting from the two accidents equally between the two accidents.

The trial judge also refused to permit the defendant on cross-examination of Dr. Sasaki and Dr. Poulson to question them on the issue of apportionability of the damages between the 1962 and 1964 accidents on the ground that the facts to be deduced from the questions were irrelevant and immaterial. To the contrary, in 1964 if the plaintiff was still suffering pain and disability from injuries she received in the 1962 accident, the answers to the questions would have been not only relevant and material, but also vital to the issue to be decided by the jury. The de-

fendant asked plaintiff's expert witness, Dr. Poulson: "Could you give me such a fair or just apportionment on the basis of a medical probability....?" Plaintiff objected on the ground that the opinion on causation must be based on reasonable medical certainty and the trial court sustained the objection to prevent "too much conjecture."

Where the subject matter is technical, scientific or medical and not of common observation or knowledge, expert testimony is allowed into evidence. *Hooper* v. *General Motors Corp.,* 123 Utah 515, 260 P.2d 549 (1953); *DeCourcy* v. *Trustees of Westminster Presby. Ch.,* 270 Minn. 560, 134 N.W.2d 326 (1965); *City of Cedarburg Light & Water Comm.* v. *Allis-Chalmers Mfg. Co.,* 33 Wis.2d 560, 149 N.W.2d 661 (1967). Such testimony is to aid the jury in the determination of the issues involved and to provide a sufficient basis for the conclusion to be drawn by the jury rather than by conjecture and speculation. *Scanlon* v. *Kansas City,* 336 Mo. 1058, 81 S.W.2d 939 (1935); *City of Cedarburg Light & Water Comm.* v. *Allis-Chalmers Mfg. Co., supra; DeCourcy* v. *Trustees of Westminster Presby. Ch., supra.* Expert testimony is not conclusive and like any testimony, the jury may accept or reject it. *Jones* v. *City of Caldwell,* 20 Idaho 5, 116 P. 110 (1911); *Grismore* v. *Consolidated Prod. Co.,* 232 Iowa 328, 5 N.W.2d 646 (1942).

Further, for the purpose of apportioning damages between two accidents, there is no necessity that an expert witness' testimony be limited or restricted by labels such as "certainty," "reasonable medical certainty," "probability," "possibility," etc. In *Dzurik* v. *Tamura,* 44 Haw. 327, 359 P.2d 164 (1960), we said at page 330; 359 P.2d at 165-166:

> "When causation of the injury is a medical issue, as it is here, '[the] matter does not turn on the use of a particular form of words by the physicians in giving

their testimony,' since it is for the trier of facts, not the medical witnesses, to make a legal determination of the question of causation. Hence the failure of a medical witness to testify positively as to what was the cause of the injury, or his statement that the accident 'might' be or 'probably' was the cause of the injury, is merely a circumstance to be taken into consideration by the trier of facts."

Also, in *Loui* v. *Oakley*, 50 Haw. at 264, 438 P.2d at 397, we stated that where the jury is unable to determine the extent of damages suffered by a plaintiff which is attributable to defendant's negligence, the jury "may make a rough apportionment" and that where it cannot make even a rough apportionment, "it must apportion the damages equally among the various accidents." Hence, medical witnesses should be allowed to testify most freely on the issue of apportionment of damages if the jury is given great latitude in determining the issue. Thus, we hold that the trial judge erred in restricting testimony of expert medical witnesses on the issue of apportionment of damages within the term of "reasonable medical certainty."

## II. Future Pain and Suffering

It is no longer disputed that pain and suffering should be considered as an item of damages in personal injury actions and may include future or prospective as well as past pain and suffering. *Lawrence* v. *Nelson,* 145 W. Va. 134, 113 S.E.2d 241 (1960) ; *Shawnee-Tecumseh Traction Co.* v. *Griggs,* 50 Okla. 566, 151 P. 230 (1915). We believe the awarding of damages for future pain and suffering should not be left to the guesswork of the jury and that the test generally to be applied as to future pain and suffering is whether future suffering appears to be reasonably probable. *Budden* v. *Goldstein,* 43 N.J. Super. 340, 128 A.2d 730 (1957) ; *Kirchgestner* v. *Denver & R.G.W.R. Co.,* 118

Utah 20, 218 P.2d 685 (1950); *Johnson* v. *Connecticut Co.,* 85 Conn. 438, 83 A. 530 (1912).

Also on this issue we agree with the reasoning of the Superior Court of New Jersey:

"[T]hat in a resolution of the conflicting interests involved, reasonable probability is the just yardstick to be applied. Basically, our view comes down to this: a consequence of an injury which is possible, which may possibly ensue, is a risk which the injured person must bear because the law cannot be administered so as to do reasonably efficient justice if conjecture and speculation are to be used as a measure of damages. On the other hand, a consequence which stands on the plane of reasonable probability, although it is not certain to occur, may be considered in the evaluation of the damage claim against the defendant. In this way, to the extent that men can achieve justice through general rules, a just balance of the warring interests is accomplished." *Budden* v. *Goldstein, supra* at 347.

We have held that where the issue as to permanency of an injury or as to future pain or suffering is subjective in character, there must be competent expert opinion testimony as to the permanency of an injury or as to future pain and suffering before a jury may be permitted to consider such damages. *Franco* v. *Fujimoto,* 47 Haw. 408, 390 P.2d 740 (1964). However, we are not saying any particular words of art are necessary to express the degree of proof required. It is sufficient if the expert's words can be interpreted to show reasonable probability.

Here we find no medical testimony that there was a reasonable probability that the plaintiff would experience pain and suffering or be disabled in the future. Accordingly, it was error for the trial judge to charge the jury on the question of future pain and suffering.

### III. Misconduct of Jurors in Incorrectly Answering Questions

It was admitted by the defendant that he had probable cause to believe that three of the jurors had incorrectly answered questions dealing with injuries to themselves on the voir dire examination before the case was submitted to the jury. However, nothing was done by the defendant until after the jury had returned verdicts against the defendant. The defendant should have brought this matter to the attention of the trial judge immediately because "[i]t is a general rule of practice that misconduct occurring upon a trial, whether by the jurors or others, must be brought to the attention of the court as soon as discovered and unless objected to, it cannot be relied upon as error upon a motion for a new trial. And, where the misconduct is known to counsel, he cannot await verdict and then complain. Otherwise, it would be possible for litigants, after learning of misconduct, to take their chances and if the verdict is against them to thereafter complain of it. By silence, when the misconduct is known, the party complaining is estopped to assert error." (Citations omitted.) *Medeiros* v. *Udell*, 34 Haw. 632, 634 (1938).

The motion for a new trial came too late and the trial judge properly denied it.

Reversed and remanded for a new trial.

*George L. Dyer, Jr. (Jenks, Kidwell, Goodsill & Anderson* of counsel) for defendant-appellant.

*Frank D. Padgett (Padgett, Greeley, Marumoto & Akinaka* of counsel) for plaintiffs-appellees.