721 So.2d 304 (1998)
Selma GROSS, Appellant/ Cross-Appellee,
v.
Rebecca Lynn LYONS, individually and as parent and natural guardian of Brittany Lyons, Appellee/ Cross-Appellant.
No. 96-1399.
District Court of Appeal of Florida, Fourth District.
May 13, 1998.
Opinion Granting Certification on Denial of Rehearing September 23, 1998.
Elizabeth M. Rodriguez of Kubicki Draper, Miami, for appellant/cross-appellee.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, Donald R. Fountain, Jr. and David M. Gaspari of Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams, P.A., West Palm Beach, for appellee/cross-appellant.
PARIENTE, BARBARA J., Associate Judge.
Following a jury verdict that found that plaintiff did not sustain a permanent injury and did not award any economic damages, the trial court granted plaintiff a new trial limited to the issue of economic damages. Appellant/cross-appellee (defendant), appeals this order granting a new trial on economic *305 damages, and also appeals the granting of a directed verdict on causation. Plaintiff cross-appeals the trial court's refusal to order a new trial on all issues of damages, including permanency. She additionally asserts error regarding a jury instruction. We reverse because the trial court gave a confusing and misleading instruction, which was also an incomplete statement of the law concerning a subsequent accident.
Plaintiff's lawsuit arises from a rear-end collision that she claims resulted in multiple injuries, including an injury to her back.[1] Three months later plaintiff was involved in a second automobile accident. Plaintiff claimed that she did not suffer any additional injuries as a result of this second accident and that her damages resulted from the first accident. When plaintiff's condition did not improve, plaintiff's treating orthopedic surgeon performed a fusion on her lower lumbar spine.
Defendant admitted liability for causing the first accident, but denied being the legal cause of plaintiff's damages. Defendant claimed that any of plaintiff's medical problems, including her back surgery, resulted from a preexisting back condition or alternatively from the second accident.
Dr. G. Clay Baynham, plaintiff's treating doctor and expert, attributed plaintiff's injuries to the first accident and assigned plaintiff a 15% permanent impairment to her body as a whole as a result of the first accident. However, Dr. Baynham also stated that because the second accident occurred within a few months of the first accident, there was not enough time to get a good idea about whether plaintiff was getting better or worse with regard to the first accident. On the subject of apportionment between the first and second accidents, he testified that:
[O]ver the majority of the time period that we followed [plaintiff], her symptoms were fairly consistent with the complaints she had following the original accident and I don't know that I can partition off any particular responsibility of the first accident versus the second accident with regard to how she ended up ultimately. It's just not possible.
Defendant's experts testified that the first accident did not lead to the surgery. Some blamed plaintiff's preexisting spinal defect; others expressed no opinion on the cause of the surgery or opined that the second accident was a cause. For example, Dr. Richard J. Stropp, one of defendant's experts, testified that plaintiff's "major back injuries occurred in the second accident." On cross-examination, however, he stated that he was not testifying with regard to causation; that is, whether it was the first accident, the second accident, or a combination of both that ultimately led to plaintiff's surgery.
At the close of the evidence, plaintiff moved for a directed verdict on the issue of causation, arguing that because it was undisputed that she had sustained at least a temporary sprain as a result of the first accident, the only question for the jury to decide was the extent of her damages. In granting a directed verdict on causation, the trial court reasoned that "no reasonable man could find but that the plaintiff suffered some medical expenses as a result of the accident."[2]
Plaintiff also moved for a directed verdict on the issue of apportionment of damages between the first and second accidents. Plaintiff argued that there should be no apportionment between the first and second accidents, as had been proposed by defendant on the verdict form, because every doctor testified that "the second accident did not cause her to need surgery, did not cause a permanent impairment." However, plaintiff conceded that this would not prohibit defendant from arguing "that some of the medical bills were incurred as a result of the second accident."
The trial court granted a directed verdict on apportionment but at the same time advised the parties that they could argue this issue to the jury. At the charge conference, defendant asserted that she was nonetheless *306 entitled to separate jury instructions concerning the preexisting back condition and the second accident.
In accordance with the standard jury instructions, the trial court instructed the jury that the plaintiff could recover for "any aggravation of an existing disease or physical defect." Fla. Std. Jury Instr. (Civ.) 6.2(b). Further, the trial court instructed the jury:
If you find that there was such an aggravation, you should determine, if you can, what portion of Ms. Lyons' condition resulted from the aggravation and make allowance in your verdict only for the aggravation; however, if you cannot make that determination, or if it cannot be said that the condition would have existed apart from the injury, you should consider and make allowance in the verdict for the entire condition.
See id. This standard instruction on aggravation covers preexisting conditions, specifically defendant's claim that plaintiff had a preexisting back condition. This instruction is not tailored to address the issue of apportionment between two accidents especially where, as here, a plaintiff is claiming that the first accident caused the injury and subsequent surgery.
Over plaintiff's objection, the trial court agreed to give defendant's requested instruction concerning the second accident:
Rebecca Lyons may not recover any loss, injury or damage caused by the second accident of September 15, 1992.
Once the trial court decided to give an instruction,[3] it should have accurately and completely stated the law.[4]See Poole v. Lowell Dunn Co., 573 So.2d 51 (Fla. 3d DCA 1990).
Reversible error occurs when an instruction is not only an erroneous or incomplete statement of the law, but is also confusing or misleading. See Florida Power & Light Co. v. McCollum, 140 So.2d 569 (Fla. 1962); see also Goldschmidt v. Holman, 571 So.2d 422, 425 (Fla.1990). Prejudice to a party further results where a jury instruction tends to endorse an argumentative position. See Sierra v. Winn Dixie Stores, Inc., 646 So.2d 264 (Fla. 3d DCA 1994).
The test is not whether a particular jury was actually misled, but "instead the inquiry is whether the jury might reasonably have been misled." McCollum, 140 So.2d at 569. Therefore, the question here is whether the jury was adequately instructed regarding the effect of the subsequent accident on plaintiff's claim for damages, or whether they might reasonably have been misled. See Emory v. Florida Freedom Newspapers, 687 So.2d 846, 847 (Fla. 4th DCA 1997). To make this determination, we must examine the law regarding apportionment of damages between multiple accidents.
In Washewich v. LeFave, 248 So.2d 670 (Fla. 4th DCA 1971), where the evidence revealed two successive accidents and the defendant was only responsible for causing the second accident, the burden was on the plaintiff to prove to the extent reasonably possible what injuries were proximately caused by each accident:
The jury should be instructed to make an apportionment of the damages between the two accidents insofar as it may be reasonably possible to do so, but if an apportionment is impossible, the jury may be authorized to charge the defendant with all damages flowing from the entire injury.

Id. at 672-73 (emphasis supplied).
Our court in Washewich explained that the requirement that a plaintiff prove that his or her damages is proximately caused by the negligence of the tortfeasor is
somewhat relaxed where the evidence indicates that the defendant's negligence has proximately resulted in an aggravation of a *307 pre-existing injury and the entire consequence cannot reasonably be divided as between several independent causes.
Id. at 672. We cited to Hamblen, Inc. v. Owens, 127 Fla. 91, 172 So. 694, 696 (1937) as support for this legal proposition:
The defendant must respond in damages for such part of the diseased condition as his negligence has caused and if there can be no apportionment, or it cannot be said that the disease would have existed apart from the injury, then he is responsible for the diseased condition.
In Washewich, we rejected the defendant's argument that the same principle should not apply where the first accident was caused by the fault of the plaintiffs:
The rule of Hamblen has as its purpose the prevention of a subsequent wrongdoer from escaping responsibility where his conduct contributed to the creation of the situation in which the problems of apportionment arose. If we are correct in this, it follows that the rule would apply regardless of whose fault caused the first accident.
Washewich, 248 So.2d at 673.
The issue is not, as the dissent suggests, whether the first accident was a proximate cause of the second accident as in Braunstein v. McKenney, 73 So.2d 852 (Fla.1954). Rather, the issue is whether the first accident was a proximate cause of plaintiff's damages. The policy issue is the same whether it be the first or second accident: a tortfeasor should not escape responsibility when two independent causes both proximately contribute to cause an ultimate injury and plaintiff has done "everything that could reasonably have been expected of her to segregate the damages as between the two accidents." Washewich, 248 So.2d at 673.
It would be inequitable for the first tortfeasor to escape responsibility merely because the plaintiff has the misfortune of being involved in a second accident.
Although this rule seems harsh [for the tortfeasor], it is predicated on a sound principle: the prevention of a subsequent wrongdoer from escaping responsibility where his conduct contributed to the creation of the situation in which the problems of apportionment arose.
Schwab v. Tolley, 345 So.2d 747, 750 (Fla. 4th DCA 1977).
The rationale of Hamblen and Washewich should be applicable where the first tortfeasor was a proximate cause of the plaintiff's damages, but a subsequent accident occurs before plaintiff's condition has stabilized. In this case, the plaintiff's treating doctor was unable to apportion the damages between the two accidents, although he was convinced that the first accident was a proximate cause of the ultimate condition, without which the surgery and permanent impairment would not have occurred.
Our supreme court has implicitly recognized that tortfeasors who contribute to cause an indivisible injury, incapable of apportionment, are both responsible for the entire injury. See Lawrence v. Hethcox, 283 So.2d 41 (Fla.1973). In Hethcox, our supreme court allowed joinder of two tortfeasors in one lawsuit because the injuries sustained in both accidents were overlapping and not apportionable. If the first tortfeasor could not be jointly liable for the ultimate injury, joinder would never have been approved.
We turn then to the wording of an appropriate instruction in this case. In Maser v. Fioretti, 498 So.2d 568, 570 (Fla. 5th DCA 1986), the trial court instructed the jury concerning two accidents that
if it could apportion damages between the two accidents it should make allowance in the verdict only for the new or aggravated injuries. If the jury was unable to apportion damages, they were instructed to consider and make allowances in the verdict for the entire condition.
The instruction approved by Maser would be appropriate here because there are two aspects to the jury's determination when two or more accidents are involved.
First, the jury should be instructed to apportion damages between the two accidents if it is reasonably possible to do so. Second, the jury should be instructed that if the injuries sustained as a result of two accidents are inseparable and cannot be apportioned, *308 it may return a verdict for the entire medical condition shown, by the greater weight of the evidence, to have been sustained by plaintiff.[5]
The instruction in this case failed to inform the jury that if the injuries could not be apportioned between the two accidents, the tortfeasor causing the first accident could be held responsible for the entire condition if plaintiff has made all reasonable efforts to apportion the injuries.
Because the jury instruction was an incomplete statement of the law concerning subsequent accidents, the jury might reasonably have been confused and misled as to what to do if they determined a combination of both accidents caused plaintiff's condition but that the damages could not be separated. In conjunction with the complete instruction given on aggravation of a preexisting condition, this incomplete instruction might have also improperly led the jury to believe that if the damages could not be apportioned, the first tortfeasor would not be responsible for the damages. See Emory, 687 So.2d at 848; see also Poole, 573 So.2d at 54 (providing the jury with two contradictory charges on the same point is inherently confusing).
Moreover, since plaintiff's physical therapy and surgery took place after the second accident, the role of the second accident related to a critical aspect of the case. Defendant asserted in closing argument that plaintiff's injuries were caused by the second accident. Because the instruction given by the trial court affirmatively told the jury that plaintiff could not recover for any loss, injury or damage caused by the second accident, this incomplete instruction might have implied to the jury that the second accident played some role in causing plaintiff's injuries. Thus, this jury instruction tended to endorse defendant's position. See Sierra.
Because this matter will be retried, we address one other aspect of this case raised by the appeal that may confront the trial court on retrialthe propriety of a directed verdict on causation. While defendant admitted that her negligence caused the first accident, the issue of whether her negligence was a legal cause of plaintiff's damages was properly for the jury to decide, based on conflicting evidence. See Easkold v. Rhodes, 614 So.2d 495 (Fla.1993); State Farm Mut. Auto. Ins. Co. v. Orr, 660 So.2d 1061 (Fla. 4th DCA 1995); cf. Bach v. Murray, 658 So.2d 546 (Fla. 3d DCA 1995).
Accordingly, we agree with defendant that it was improper for the court to direct a verdict on causation of damages. The jury could have found that any expenses incurred after the first accident were offset by her personal injury protection benefits and that she sustained no permanent injury as a result of the first accident. See Colvin v. Williams, 564 So.2d 1249 (Fla. 4th DCA 1990); see also Emanuele v. Perdue, 693 So.2d 1071 (Fla. 4th DCA 1997).
We reverse and remand for a new trial on all issues other than defendant's negligence for causing the accident, which defendant admitted.
REVERSED AND REMANDED FOR A NEW TRIAL.
DELL, J., concurs.
WARNER, J., concurs in part and dissents in part with opinion.
WARNER, Judge, concurring in part and dissenting in part.
While I concur that a new trial is warranted in this case, I disagree with the majority regarding the apportionment issue.
First, from reading the transcript I am not certain that the trial court directed a verdict on apportionment of damages between the first accident and the second. The plaintiff's attorney moved for a directed verdict:
on the issue of the second accident. Every doctor that's testified in this case has said that the second accident did not cause her to need surgery, did not cause a permanent impairment. Now that does not prohibit *309 Mr. Colvin from arguing that some of the medical bills were incurred as a result of the second accident. He can still do that. But the jury cannot determine that the second accident was a cause of my client's surgery or a cause of permanent impairment.
I conclude that the plaintiff's attorney was arguing that the second accident was not a proximate cause of the plaintiff's injuries, and that is the motion the trial court granted. But I admit that the issue is not clear, and if the plaintiff moved for a directed verdict that the second accident was not a proximate cause of injury, then I think the court would have erred in granting it because the evidence was in conflict as to whether some of the plaintiff's problems increased after the second incident.
The standard jury instruction on aggravation of a pre-existing injury or defect is a damage instruction based on the theory that a tortfeasor takes the plaintiff "as is," injuries and all. It was never intended to apply to determinations of apportionment for damages from a subsequent accident. A tortfeasor is liable for damages resulting from a subsequent accident only if that accident constitutes a foreseeable intervening cause of the loss to the plaintiff. See Ellingson v. Willis, 170 So.2d 311, 313-15 (Fla. 1st DCA 1964), disapproved of on other grounds, Devlin v. McMannis, 231 So.2d 194 (Fla.1970). Standard Jury Instruction 5.1(c) explains how we treat intervening events:
[In order to be regarded as a legal cause of ... [injury] ..., negligence need not be its only cause.] Negligence may also be a legal cause of ... [injury] [or] [damage] even though it operates in combination with [the act of another] ... [or] some other cause occurring after the negligence occurs if [such other cause was itself reasonably foreseeable and the negligence contributes substantially to producing such ... [injury] [or] [damage]] [or] [the resulting ... [injury][or][damage] was a reasonably foreseeable consequence of the negligence and the negligence contributes substantially to producing it].
(brackets in original).
This principle has been applied in most jurisdictions. In Proximate Cause: Liability of Tortfeasor for Injured Person's Subsequent Injury or Reinjury, 31 A.L.R.3d 1000 (1971), the author summarizes the rule:
Although the basic principle of liability has been stated in various terms, the courts uniformly recognize that a tortfeasor whose negligence has caused injury to another is also liable for any subsequent injury or reinjury that is the proximate result of the original injury, except where the subsequent injury or reinjury was caused by either the negligence of the injured person, or by an independent or intervening act of the injured person, or by an independent or intervening act of a third person.... [T]ortfeasors have not been held liable for subsequent injuries or reinjuries that were not caused by, or the result of, the first injury.

Id. at 1003 (emphasis supplied)(footnotes omitted). Braunstein v. McKenney, 73 So.2d 852 (Fla. 1954), is cited in the annotation as one case supporting this principle. In that case, McKenney was injured in an automobile accident. Nine months later he lost control of his motorcycle, and in his suit against the automobile owner in the first accident, he claimed that the subsequent accident was the result of injuries sustained in the first accident. The supreme court held that a directed verdict should have been granted on causation as the evidence was insufficient to show that the injury received in the first accident was the proximate cause of the second accident. "Under such circumstances, the trial court should have determined, as a matter of law, that the defendants were not liable for the injuries sustained in the second accident...." Id. at 853. Braunstein is not directly on point as there is no indication that the second accident aggravated the injuries suffered in the first accident. However, it is indicative that courts look to causation principles in evaluating whether a first tortfeasor can be liable for injuries in a second accident.
Bruckman v. Pena, 29 Colo.App. 357, 487 P.2d 566 (1971), is a similar case to the instant one. The plaintiff was injured in two automobile accidents occurring less than a year apart. The defendant in the case was *310 the owner and driver of the automobile in the first accident. The plaintiff claimed that the second accident aggravated the injuries which he had incurred during the first accident. Bruckman acknowledged the general principal of liability of a tortfeasor for aggravation of a pre-existing condition, but noted that "it is quite another thing to say that a tort-feasor is liable, not only for the damage which he caused, but also for injuries subsequently suffered by the injured person." Id. at 568. The court further held that:
[O]ne injured by the negligence of another is entitled to recover the damages proximately caused by the act of the tort-feasor, and the burden of proof is upon the plaintiff to establish that the damages he seeks were proximately caused by the negligence of the defendant.
Id. Similarly, in Hashimoto v. Marathon Pipe Line Co., 767 P.2d 158 (Wyo.1989), the plaintiff contended that where damages resulting from injuries suffered in two accidents are claimed but cannot be apportioned between the two accidents, the tortfeasor in the first accident must be responsible for all damages. Aligning itself with Bruckman, the Wyoming Supreme Court held that the tortfeasor in the first accident was not liable for injuries suffered in the second accident.[6]See id. at 161. This rule has been followed by a number of jurisdictions, as is apparent from the citations in Hashimoto, which I do not reproduce here. See id.
The same result was obtained in Loui v. Oakley, 50 Haw. 260, 438 P.2d 393 (1968), where the plaintiff sued the tortfeasor in the first accident but sought to hold the tortfeasor liable for injuries from three unrelated subsequent accidents. The court held that it was error to instruct the jury that if it could not apportion the damages, the defendant (the driver in the first accident) would be liable for the damages from all four accidents. The court wrote:
In deciding this case, we must steer a careful course between the Scylla of denying the plaintiff any remedy and the Charybdis of imposing on one defendant all the damages, at least some of which would not have occurred without the independent acts of other persons.
We hold that the proper procedure is for the trial court to instruct the jury that if it is unable to determine by a preponderance of the evidence how much of the plaintiff's damages can be attributed to the defendant's negligence, it may make a rough apportionment. Heretofore, this court has recognized that the
law never insists upon a higher degree of certainty as to the amount of damages than the nature of the case admits, and that where, as here, the fact of damage is established, a more liberal rule is allowed in determining the amount. Coney v. Lihue Plantation Co., Limited, 39 Haw. 129, 139 (1951) [additional citation omitted][footnote omitted].
Inherent in such a lessening of the burden of proof is the assumption that both parties will be permitted to introduce all relevant evidence pertaining to all the accidents even though all the alleged tortfeasors may not be before the court in the same action. We recognize that the probative value of evidence, such as the comparative damage to the plaintiff's car after the various accidents, may be weak. Nevertheless, where the plaintiff interjects into the case the question of indivisibility, the trial court must consider this additional factor in determining whether to admit evidence with relatively little probative value.
The trial court should instruct the jury that if it is unable to make even a rough apportionment, it must apportion the damages equally among the various accidents [citing Prosser, Torts 253 (3d ed.1964)]. We recognize that this resolution is arbitrary. It is, however, no less arbitrary than placing the entire loss on one defendant.
Id., 438 P.2d at 396-97. Loui was reaffirmed by the Hawaii Supreme Court in Montalvo v. Lapez, 77 Hawai'i 282, 884 P.2d 345 (1994).
*311 In a comprehensive article, Professor Gerald W. Boston, a member of the American Law Institute and member of the consultative group on RESTATEMENT (THIRD) OF TORTS, Apportionment Topics, noted that:
Montalvo supports the black letter rule so long as the equal shares approach is a "reasonable basis" for an apportionment. Prosser has referred to an equal division among tortfeasors as a "last resort" [where] in the absence of anything to the contrary, it may be presumed that the defendants are equally responsible. Montalvo represents modern authority that is driven by a sense of fairness to all the parties and a preference for a single proceeding in which all responsible parties are joined.
Boston, "Apportionment of Harm in Tort Law: A Proposed Restatement," 21 Univ. of Dayton L.Rev. 267, 341 (Winter 1996). Boston opines that because of the competing interest of, on the one hand, making the plaintiff whole again, and on the other hand, holding each defendant liable only for the harm that that particular defendant caused, the law should create incentives for plaintiffs to sue all potentially responsible parties in one proceeding.[7] The rule adopted by the majority here would not serve that interest. In fact, it completely ignores the fairness issue to the defendants who may be held liable for harm far in excess of what they may have caused.
There is some contrary authority across the country. For instance, in both Phennah v. Whalen, 28 Wash.App. 19, 621 P.2d 1304, 1307-09 (1980) and Pang v. Minch, 53 Ohio St.3d 186, 559 N.E.2d 1313, 1322-23 (1990), the courts relied on the RESTATEMENT (SECOND) OF TORTS, section 433B, to shift the burden of proof on the issue of apportionment of harm between unrelated accidents to the defendants. However, in Phennah the court also suggested that if a jury deadlocked over apportionment, the trial court should consider the application of joint and several liability principles. See 621 P.2d at 1309.
The cases cited by the majority are all factually inapposite to this case. They involve the apportionment of damages where the plaintiff was claiming damages from a first accident or injury against the second tortfeasor. The majority is simply using that case law to come to the conclusion that in a two accident scenario where the damages cannot be apportioned, a plaintiff may recover his/her damages against either the first tortfeasor or the second tortfeasor. This is a new legal theory for Florida which has not been recognized anywhere in the manner in which the majority applies it.
The tort system attempts to balance concepts of fairness and justice which do not always coincide. On the one hand, the policy of the law seeks to be fair by requiring a tortfeasor to be responsible only for the harms caused by the tortfeasor's own negligence. On the other hand, the notion of corrective justice seeks to compensate the injured party for the full amount of damages suffered. In such cases, unrelated accidents have combined to create a plaintiff's injuries, fairness and justice can combine only when all parties potentially liable are before the court so that apportionment of damages can occur. The majority's rule will operate as a disincentive to achieving this dual result. Instead, a plaintiff can choose to sue the most solvent tortfeasor and obtain all of the damages from one, even where the injuries are indivisible.
Because the law in the majority of courts is to the contrary, I cannot concur with the majority's holding that aggravation of injuries from a subsequent accident may be charged to a first tortfeasor where apportionment of damages is not possible. I would require apportionment and would adopt the "rough apportionment" principles of Montalvo as the "next best" solution where a jury cannot apportion. It seems to me that this more equitably balances the *312 fairness to the tortfeasor with compensation to the victim. While a tortfeasor may be allocated somewhat more fault than what his or her negligence actually caused, a plaintiff will be assured at least some recovery from the responsible parties. Moreover, such a result would act as an incentive for a plaintiff to sue all potentially responsible parties in one action.
This issue has never been addressed in Florida, and it is a change in common law principles. I would certify the following question to the supreme court:
WHERE A PLAINTIFF IS INVOLVED IN TWO UNRELATED ACCIDENTS AND SUES ONLY THE TORTFEASOR IN THE FIRST ACCIDENT, ARE THE PRINCIPLES OF APPORTIONMENT CONTAINED IN C.F. HAMBLEN, INC. V. OWENS, 127 Fla. 91, 172 So. 694, 696 (Fla.1937), AND WASHEWICH V. LeFAVE, 248 So.2d 670, 672 (Fla. 4TH DCA 1971) APPLICABLE?

ON MOTION FOR REHEARING
PER CURIAM.
We deny the motion for rehearing but grant the motion for certification and certify the following question to the supreme court as one of great public importance:
WHERE A PLAINTIFF IS INVOLVED IN TWO UNRELATED ACCIDENTS AND SUES ONLY THE TORTFEASOR IN THE FIRST ACCIDENT, ARE THE PRINCIPLES OF APPORTIONMENT CONTAINED IN C.F. HAMBLEN, INC. V. OWENS, 127 Fla. 91, 172 So. 694, 696 (1937), AND WASHEWICH V. LeFAVE, 248 So.2d 670, 672 (Fla. 4TH DCA 1971) APPLICABLE?
DELL and WARNER, JJ., concur.
WARNER, J., also concurs specially.
PARIENTE, BARBARA J., Associate Judge, concurs.
WARNER, Judge, concurring specially.
Upon further research, I also think that the majority opinion conflicts with Great Atlantic & Pacific Tea Co. v. Lanteri, 221 So.2d 158, 159 (Fla. 3d DCA 1969), in which the third district stated with regard to jury instructions on subsequent accidents:
Reviewing the charge in its entirety, we find it correctly charged the jury that in the event it found the plaintiff, Yolanda Lanteri, had been injured and suffered damages as a result of the initial accident, it should eliminate from any damage consideration injuries sustained in the subsequent accidents.

(emphases added). This issue affects many cases brought before the courts of this state and ought to be resolved by our supreme court.
NOTES
[1] Plaintiff Rebecca Lyons also brought a claim on behalf of her daughter, Brittany, for loss of parental consortium.
[2] This was also the trial court's rationale for granting a new trial on economic damages after the jury returned a zero verdict.
[3] The trial court's decision to give this particular instruction is inconsistent with the fact that the court had directed a verdict on apportionment. This instruction rendered the directed verdict legally ineffective. Defendant did not separately appeal the directed verdict on apportionment and the failure to include apportionment on the verdict form. It would appear that there was conflicting evidence on this issue.
[4] No standard jury instruction presently covers the subject of multiple accidents. Because this issue arises frequently, a standard instruction would be helpful to the bench and bar.
[5] A special interrogatory that allows the jury to apportion between the first and second accidents if it is reasonably possible to do so would help prevent any miscarriage of justice, especially if recovery or contribution is subsequently sought from the other tortfeasor. See, e.g., Yellow Cab Co. of St. Petersburg, Inc. v. Betsey, 696 So.2d 769 (Fla. 2d DCA 1996).
[6] The court does note that the ultimate injuries were caused by the second collision because the injuries from the first collision had stabilized, but it does not limit its holding to the particular facts of the case.
[7] In Lawrence v. Hethcox, 283 So.2d 41 (Fla. 1973), the court determined that joinder of the tortfeasors of two unrelated accidents was appropriate where issues of apportionment of damages were present. The court noted that this served the public policy favoring "the elimination of multiplicity of suits and unreasonable impediments to the remedial process of adjudication of adversary rights conferred by the operation of substantive principles of law...." Id. at 44.