NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4042-19T3

TODD B. GLASSMAN, as
Executor of the Estate of
JENNIFER K. COLLUM-
GLASSMAN, deceased,

       Plaintiff-Appellant,

v.

STEVEN P. FRIEDEL, M.D.,
CHARLES W. FARRELL, M.D.,
LON WEINER, M.D., NATACHA
FIELD, R.N., TANYA GOODEN,
R.N., CONSTANCE MACKAY,
R.N., ANURADHA THALASILA,
M.D., and HACKENSACK
MERIDIAN HEALTH d/b/a
RIVERVIEW MEDICAL CENTER,

       Defendants-Respondents,

and

JUANITO'S INC. and KLE
PROPERTIES, LLC,

       Defendants.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 3, 2020**
>
> **APPELLATE DIVISION**

Argued September 21, 2020 – Decided December 3, 2020

Before Judges Messano, Suter and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2383-18.

Christina Vassiliou Harvey argued the cause for appellant (Lomurro, Munson, Comer, Brown & Schottland, LLC, attorneys; Jonathan H. Lomurro, of counsel; Christina Vassiliou Harvey, of counsel and on the brief; Alan J. Weinberg, on the brief).

Jeffrey J. Niesz argued the cause for respondent Steven Friedel, M.D. (Orlovsky, Moody, Schaaff, Conlon & Gabrysiak, attorneys; Paul F. Schaaff, Jr., of counsel; Jeffrey J. Niesz, on the brief).

Matthew J. Heagen argued the cause for respondent Charles W. Farrell, M.D. (Grossman, Heavy & Halpin, PC, attorneys; Matthew J. Heagen, on the brief).

Charles C. Koernig argued the cause for respondent Lon Weiner, M.D. (Kaufman Borgeest & Ryan, attorneys; Charles C. Koernig and Jennifer C. Willis, on the brief).

Anthony M. Tracy argued the cause for respondents HMH Hospitals, Corp. d/b/a Riverview Medical Center, Natasha Field, R.N., and Tanya Gooden, R.N. (Ronan, Tuzzio & Giannone, attorneys; Anthony M. Tracy, of counsel and on the brief).

Michael R. Ricciardulli argued the cause for respondent Anuradha Thalasila, M.D. (Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys; Michael R. Ricciardulli, of counsel and on the brief; Jessica J. Mahony, on the brief).

Herbert Kruttschnitt, III argued the cause for respondent Constance Mackay, R.N. (Dughi, Hewit & Domalewski, PC, attorneys; Herbert Kruttschnitt, III,

of counsel and on the brief; Ryan A. Notarangelo, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

In Ciluffo v. Middlesex General Hospital, we adopted a framework for trial courts to follow in addressing the thorny issues posed when a plaintiff settles a negligence claim with the original tortfeasor and proceeds to trial against a medical professional whose subsequent negligent treatment results in additional injuries and damages. 146 N.J. Super. 476 (App. Div. 1977). In Ciluffo, the plaintiff injured her neck when she fell down a flight of stairs at a friend's house. Id. at 479. After examining the plaintiff the next afternoon at the hospital, the defendant-doctor released her home with a cervical collar and medication for pain. Ibid. Further review by another doctor of the x-rays taken at the hospital revealed a fracture of the plaintiff's cervical spine. Ibid. Treatment of the fracture led to further complications, including the need for cervical traction, and the onset of blood poisoning and pneumonia. Ibid.

The plaintiff settled her claim with the owner of the premises where she fell for $30,000. Id. at 480. Based on the evidence, the trial judge determined that plaintiff failed to prove any complications were causally related to the delayed treatment of the fracture. Ibid. He also "dismissed [the] plaintiff's

claim for <u>added pain and suffering</u> for the period between her release from the emergency room and the time she reported back to the hospital for further treatment," concluding "in effect, that the claim for pain and suffering during the period of less than [twenty-four] hours during which treatment was delayed would not support a verdict in excess of the $30,000 already paid to plaintiff" by settlement with the premises owner. <u>Id.</u> at 480–81.

We observed that "[w]hen a plaintiff settles with the first of <u>successive independent tortfeasors</u> we usually do not know whether that settlement constituted payment in full for all claims." <u>Id.</u> at 482 (emphasis added). The initial tortfeasor — the owner of the premises — was "potentially liable for all the natural and proximate injuries that flow from the initial tort, including the consequences of medical treatment . . . caused by his wrong." <u>Ibid.</u> (citing <u>Knutsen v. Brown</u>, 96 N.J. Super. 229, 235 (App. Div. 1967)). However, we noted that "questions of liability may make [the] plaintiff's recovery from either tortfeasor uncertain[,]" and "[t]he degree of injury caused by the second tortfeasor adds another variable." <u>Ibid.</u>

In reversing and remanding for a new trial on liability and damages as to the doctor, we held that "where [the] plaintiff has settled with the first tortfeasor and claims that she was not paid for all of her injuries, <u>she is entitled to have the injuries caused by the successive independent tortfeasor assessed</u>

4

and compared with the damages recoverable for all of her injuries." Ibid. (emphasis added). In other words, the plaintiff was entitled to have a factfinder apportion the damages caused by the two events, i.e., her fall and the delay in treatment.

Our decision then set forth what is the crux of this appeal. We held that if the plaintiff succeeded in proving the doctor's negligence and damages caused by the delay in treatment at a new trial, the defendant-doctor was entitled potentially to a pro tanto credit[1] against any award based on the plaintiff's prior settlement with the owner of the premises.

> If the settlement exceeds plaintiff's total provable damages she would be entitled to no further recovery from [the doctor]. If the settlement exceeds the amount of her provable damages minus the damages caused by [the doctor], the amount of such excess should be credited against the damages assessed solely for the harm caused by [the doctor]. If the settlement is less than the amount of her total provable damages minus the damages caused solely by [the doctor], plaintiff should recover the full amount of damages assessed against [the doctor] alone for the pain and suffering allegedly endured by her during the delay in treatment within the first [twenty-four] hours.

---

[1] "Pro tanto" is defined as "[t]o that extent; for so much[.]" Black's Law Dictionary 1478 (11th ed. 2019). A "pro tanto credit" is "a credit in the amount of the settlement with the settling tortfeasor[.]" Restatement (Third) of Torts: Apportionment of Liability § 16 cmt. c (Am. Law Inst. 2000) (Restatement (Third)).

[Id. at 482–83 (citations omitted).]

We explained the rationale for awarding a full pro tanto settlement credit to the defendant-doctor if the plaintiff's settlement exceeded the amount of her total "provable damages" as determined by the jury, or a partial credit if the settlement exceeded the difference between the total amount of damages, and the amount the jury apportioned to the medical negligence:

> [N]either tortfeasor in this case has an interest in the claim [the] plaintiff has asserted against the other except that, as here, where two parties commit successive independent torts, one may receive credit for part of the payment made earlier by the other tortfeasor "to avoid duplicating compensation to the plaintiff."
>
> [Id. at 483 (quoting Daily v. Somberg, 28 N.J. 372, 381–86 (1958)) (emphasis added).]

Our decision in Ciluffo did not address the continued viability of a settlement credit after enactment of the Comparative Negligence Act (CNA), N.J.S.A. 2A:15–5.1 to -5.8.[2]   However, since passage of the CNA, the framework we devised in Ciluffo for potentially awarding the non-settling tortfeasor a pro tanto credit based upon the plaintiff's settlement with the original tortfeasor has been accepted, albeit without significant analysis, by

---

[2]  The CNA became effective on August 22, 1973, see L. 1973, c. 146, while the events in Ciluffo occurred during April 1972.  Id. at 479–80.

other reported cases. See, e.g., Clark v. Univ. Hosp.-UMDNJ, 390 N.J. Super. 108, 119 (App. Div. 2006) ("Ciluffo can be applied in situations, like the instant matter, where plaintiff is first subjected to a tort that brings him to a hospital where medical care providers then subject plaintiff to a second, independent tort."); Mitchell v. Procini, PA, 331 N.J. Super. 445, 456 (App. Div. 2000) ("[T]o avoid duplicating compensation paid to a plaintiff, the successive tortfeasor may receive a credit for part or all of the payment made by the initial tortfeasor." (citing Ciluffo, 146 N.J. Super. at 483)).

None of these cases, however, discussed the continued viability, after enactment of the CNA, of awarding an adjudicated tortfeasor a pro tanto settlement credit absent any finding that the initial tortfeasor was culpably negligent. And, although the Court has cited Ciluffo with approval in other contexts, see Williamson v. Waldman, 150 N.J. 232, 252 (1997); Evers v. Dollinger, 95 N.J. 399, 411 (1984); Lynch v. Rubacky, 85 N.J. 65, 80 n.3 (1981) (Clifford & Schreiber, JJ., dissenting), it has never endorsed application of a pro tanto credit to a successive tortfeasor based on a plaintiff's settlement with an initial tortfeasor.

Here, plaintiff Todd Glassman, as executor of the estate of his deceased wife, Jennifer K. Collum-Glassman, sued defendants Juanito's Inc. and KLE Properties, LLC (collectively, Juanito's), the restaurant and property owner of

7

the site where Jennifer fell and fractured her left ankle.[3]  Jennifer received medical treatment for the injury, ultimately "coming under the care" of defendants Hackensack Meridian Health, d/b/a Riverview Medical Center, Doctors Steven P. Friedel, Lon Weiner, Charles W. Farrell, Anuradha Thalasila, and Registered Nurses Natacha Field, Tanya Gooden, and Constance MacKay (collectively, the Medical Defendants).

In an amended complaint that added the Medical Defendants, plaintiff alleged their negligence during surgery performed on Jennifer's left ankle five days after the fall led to post-operative complications and injuries to her right leg, including weakness, "impaired sensory motor function[,]" "[p]ost-operative compressive neuropathy," "foot drop," and "[c]ompression of the distal aspect of the right sciatic nerve and peroneal nerve with sensory impairment[.]"[4]

Approximately one month after surgery, and one day before her forty-sixth birthday, Jennifer died from a pulmonary embolism.  At the time of her death, Jennifer was a special education teacher at a local high school and the

---

[3]  To avoid confusion, we use the first name of plaintiff's decedent.  We intend no disrespect by this informality.

[4]  The record before us is scant.  We refer, therefore, to the allegations contained in plaintiff's complaint.  We are advised discovery continues.

mother of two teenage sons. Plaintiff contends the Medical Defendants' negligent treatment resulted in injury to Jennifer's right leg, increasing her immobility as a result, and that they failed to provide appropriate "anticoagulation" medications, resulting in the fatal embolism.

Plaintiff settled with Juanito's for $1.15 million. Citing our holding in Ciluffo, the Medical Defendants filed motions seeking a declaration that they would be entitled to a pro tanto credit against any potential damage award based on the formula we explained in that case. Plaintiff opposed the motion and requested oral argument; however, the judge decided the motions on the papers, granting the relief. Plaintiff moved for reconsideration, which, after hearing oral argument, the judge denied.

We granted plaintiff leave to appeal. He argues the judge erred by deciding a factual issue — whether Juanito's was negligent — which must be reserved for the jury. In other words, plaintiff contends it was error to grant the Medical Defendants the possibility of any credit based on the settlement with Juanito's without proof of Juanito's fault. Additionally, plaintiff argues that, even assuming Juanito's fault was established, the CNA applies equally to joint and successive tortfeasors, replaces Ciluffo's formulation and eliminates the possibility of a pro tanto credit based on the settlement with Juanito's.

9

The Medical Defendants contend that the CNA only applies to joint tortfeasors, not successive tortfeasors, each of whom, if found negligent, are only responsible for damages proximately caused by their negligence, and not damages occasioned by the negligence of the original tortfeasor. Therefore, the Medical Defendants argue that the potential pro tanto settlement credit envisioned by Ciluffo's framework must apply to avoid a duplication of damages and a potential windfall recovery by plaintiff.

Although we find neither set of arguments wholly satisfying, we conclude that application of a pro tanto settlement credit in a negligence case, whether it involves joint or successive tortfeasors, is a vestige of the common law and has no support in our current jurisprudence. We therefore reverse and vacate the orders under review.

## I.

All parties concede this suit involves allegations of negligence by successive, and not joint, tortfeasors. The essence of the Medical Defendants' argument is that this distinction compels different results regarding the effect of plaintiff's settlement with Juanito's on any award of damages proximately caused by their medical negligence. The contention requires us first to discuss joint versus successive tort liability, and how those two statuses impact an award of damages.

10

## A.

Joint tortfeasors are "'two or more persons [who are] jointly [and] severally liable in tort <u>for the same injury</u>' . . . and not . . . the cumulative damages the tort victim sustained as a result of multiple disparate injuries caused by multiple tortfeasors." <u>Cherry Hill Manor Assocs. v. Faugno</u>, 182 N.J. 64, 75 (2004) (quoting N.J.S.A. 2A:53A-1) (emphasis added). The Joint Tortfeasors Contribution Law (JTCL), N.J.S.A. 2A:53A-1 to -5, "was enacted to change the injustice of the common law, which permitted a plaintiff to place the entire burden of fault on one defendant, who was then helpless to shift any of the responsibility to any other joint defendants." <u>Tino v. Stout</u>, 49 N.J. 289, 298 n.3 (1967); <u>see also</u> <u>Town of Kearny v. Brandt</u>, 214 N.J. 76, 97 (2013) (noting the JTCL "was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim" (quoting <u>Holloway v. State</u>, 125 N.J. 386, 400–01 (1991))). Once enacted, the JTCL apportioned any damage award on a pro rata basis among adjudicated tortfeasors. <u>See</u> <u>Blazovic v. Andrich</u>, 124 N.J. 90, 103 (1991) (noting that under the JTCL, "[a] court determined a tortfeasor's <u>pro rata</u> share simply by dividing the total verdict by the number of available tortfeasors, that is, those solvent tortfeasors not beyond the reach of process").

A-4042-19T3

However, enactment of the CNA two decades later, working in conjunction with the JTCL, significantly altered the respective rights of joint tortfeasors. See Kranz v. Schuss, 447 N.J. Super. 168, 170–71 (App. Div. 2016) (explaining relationship between the two statutes). "[W]hen applied together, the [CNA and JTCL] implement New Jersey's approach to fair apportionment of damages among plaintiffs and defendants, and among joint defendants." Brandt, 214 N.J. at 97 (quoting Erny v. Estate of Merola, 171 N.J. 86, 99 (2002)). The CNA forged the critical link between a joint tortfeasor's relative fault and its share of damages. See Johnson v. Am. Homestead Mortg. Corp., 306 N.J. Super. 429, 436 (App. Div. 1997) ("[T]he effect of the [CNA] was to replace the former pro rata liability of joint tortfeasors under the [JTCL] . . . with the obligation of each tortfeasor to pay damages in accordance with its own adjudicated percentage of fault.").

Because of the CNA, a plaintiff may recover the full quantum of damages from a single tortfeasor only if that party is "determined by the trier of fact to be [sixty percent] or more responsible for the total damages." N.J.S.A. 2A:15-5.3(a). Those tortfeasors determined "by the trier of fact to be less than [sixty percent] responsible for the total damages[,]" are liable "[o]nly [for] that percentage of the damages directly attributable to that [tortfeasor's] negligence or fault[.]" N.J.S.A. 2A:15-5.3(c).

12

In tandem, the two statutes also altered the effect of a plaintiff's settlement with one tortfeasor on his or her claim against any remaining joint tortfeasors and the non-settling defendant's right to contribution. Pursuant to the JTCL:

> [A] settling tortfeasor . . . ha[d] no further liability to any party beyond that provided in the terms of settlement, and . . . a non-settling defendant's right to a credit reflecting the settler's fair share of the amount of the verdict — regardless of the actual settlement — represent[ed] the judicial implementation of the statutory right to contribution.
>
> [Young v. Latta, 123 N.J. 584, 591 (1991) (emphasis added).]

"The pro rata contribution scheme of the [JTCL was] eclipsed by the percentage-liability formula established by sections 5.2 and 5.3 of the [CNA]." Id. at 592 (citing Cartel Cap. Corp. v. Fireco of N.J., 81 N.J. 548, 569–70 (1980); Rogers v. Spady, 147 N.J. Super. 274, 277 (App. Div. 1977)).

"Pursuant to the [CNA], the finder of fact must make an allocation of causative fault between settling and non-settling defendants so that the court can calculate the amount of the credit due [to] the non-settler even though the non-settler cannot pursue a claim for contribution against the settler." Ibid. (citing Dimogerondakis v. Dimogerondakis, 197 N.J. Super. 518 (Law Div. 1984)). As Judge Pressler explained:

13

A necessary corollary of this scheme is to deny to comparative-negligence joint tortfeasors a reduction of their liability based on a plaintiff's pretrial settlement with a defendant who is never found to be liable at all. Thus, under the comparative-negligence scheme, <u>a plaintiff is entitled to retain the proceeds of the pretrial settlement as well as the full jury verdict as allocated among all other defendants</u>.

. . . .

<u>[U]nless the settling defendant's percentage of liability is adjudicated at trial, there is simply no right in the adjudicated tortfeasors to a reduction of their own separately-allocated responsibility for the verdict.</u>

[<u>Johnson</u>, 306 N.J. Super. at 436–37 (emphasis added).]

The CNA therefore significantly altered the landscape that existed after enactment of the JTCL "as construed by <u>Theobald v. Angelos</u>, 44 N.J. 228 (1965) [<u>Theobald II</u>],[5] under which the non-settling defendants were entitled to a <u>pro tanto</u> credit for the proceeds of the settlement made by plaintiff with the settling defendant whose liability was never adjudicated." <u>Id.</u> at 436–37; <u>see also</u> <u>Tefft v. Tefft</u>, 192 N.J. Super. 561, 568 (App. Div. 1983) (noting that the <u>Theobald II</u> "<u>pro tanto</u> deduction . . . if the settling party is not found to be

---

[5]  We discuss both cases in greater detail below.

14

negligent" was "changed with the introduction and interpretation of the [CNA]" (citing Rogers, 147 N.J. Super. at 277)).

The Medical Defendants do not dispute these basic principles but rather contend they are inapplicable to situations involving successive tortfeasors.  In other words, despite the CNA's elimination of pro rata and pro tanto credits among joint tortfeasors in personal injury negligence actions, and replacement with a credit based solely upon a settling joint tortfeasor's adjudicated percentage of fault, the Medical Defendant's argue that Ciluffo's calculus still applies to successive tortfeasors, even if the settling tortfeasor's culpable negligence was never adjudicated.  The Medical Defendants assert a single reason for the continued vitality of the Ciluffo pro tanto credit, namely, without it, a plaintiff who settles with the initial tortfeasor might receive a windfall at trial.

B.

We acknowledge the differences between joint and successive tortfeasors.  In the case of successive tortfeasors, the common law rejected any notion of joint and several liability and long provided that the first tortfeasor "is responsible for all damages that naturally and proximately flow from the initial tort, including the consequences of medical malpractice in treating the injuries caused by his wrong."  New Milford Bd. of Educ. v. Juliano, 219 N.J.

15

Super. 182, 187 (App. Div. 1987) (citing <u>Ciluffo</u>, 146 N.J. Super. at 482; <u>Knutsen</u>, 96 N.J. Super. at 235); <u>accord</u> <u>Williamson</u>, 150 N.J. at 252 ("Traditionally, our courts have held that an initial tortfeasor is liable for the results of the medical treatment of an injured victim." (citing <u>Ciluffo</u>, 146 N.J. Super. at 482; <u>Knutsen</u>, 96 N.J. Super. at 235)); <u>Doe v. Arts</u>, 360 N.J. Super. 492, 510 (App. Div. 2003) (citing <u>Williamson</u>). <u>See also</u> <u>Restatement (Second) of Torts</u> § 457 (Am. Law Inst. 1965) (<u>Restatement (Second)</u>) ("If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional . . . harm resulting from normal efforts of third persons in rendering aid . . . irrespective of whether such acts are done in a proper or a negligent manner."); <u>Prosser & Keeton on Torts</u> § 44, at 309 (5th ed. 1984) (collecting cases holding "the defendant liable for the results of medical treatment of the injured victim[, e]ven where such treatment is itself negligent").

Although the initial tortfeasor may not seek contribution, a purely statutory right, from the successive tortfeasor because they are not joint tortfeasors, it may seek indemnification. In <u>Juliano</u>, after settling the claim of an injured student, the plaintiffs, a town and its school board, sought indemnification from non-party doctors who they alleged negligently treated

the student, causing amputation of three of her toes. 219 N.J. Super. at 184.

As Judge Skillman characterized the plaintiffs' claim against the doctors:

> Plaintiffs do not seek to escape responsibility for their tortious conduct by holding defendant doctors liable for all damages incurred by [the student]. Rather, plaintiffs' claim is limited to the difference between what [the student's] damages would have been if defendants had not committed malpractice and the full amount of damages which she suffered as a result of both the original accident and the subsequent malpractice.
>
> [Id. at 186–87 (emphasis added).]

In recognizing the initial tortfeasor's right to seek indemnification, we noted:

> the responsibility of an initial tortfeasor for the additional harm caused by subsequent medical malpractice is less immediate and less direct than the responsibility of the party or parties who have actually committed the malpractice. Indeed, the initial tortfeasor's responsibility for that additional harm can be viewed as a form of constructive or secondary liability.
>
> [Id. at 187.]

Accordingly, we held that "justice require[d] recognition" of the initial tortfeasor's right to seek indemnification from the successive tortfeasor. Ibid.

In the case of successive tortfeasors, neither party may have any interest in the plaintiff's claim against the other on the issue of liability. Ciluffo, 146 N.J. Super. at 483. However, each clearly has an interest in paying no more

17

than its fair share of the plaintiff's total damages. We have recognized the successive tortfeasor's right to limit its damages, even if responsibility for the initial causative event is not before the factfinder.

In Lewis v. Preschel, the plaintiffs obtained a liability verdict for malpractice committed in the medical treatment of a broken arm, the result of an automobile accident.[6] 237 N.J. Super. 418, 420 (App. Div. 1989). Following a damages only trial and judgment in favor of the plaintiffs for over $800,000, we agreed with the defendant-doctor's argument that "the trial judge prejudicially restricted [him] . . . from presenting evidence which would have addressed the extent to which the malpractice, as distinct from the accident-caused initial injury, contributed to the damages proved[.]" Id. at 420–21. We reversed and remanded for a new trial on damages, because the jury was not instructed on the issue of "how much of the damages award was attributable to . . . malpractice, as distinguished from those damages which would have arisen even if the reduction and related treatment had not been negligently performed." Id. at 422–23.

---

[6] Our decision fails to indicate if the car accident was the result of any negligence or the subject of prior litigation. Therefore, strictly speaking, there may not have been successive tortfeasors, although there were clearly successive events that caused the plaintiff's total quantum of injuries and damages.

## C.

Unlike the joint tortfeasor situation where multiple defendants may be liable for the "same injury," N.J.S.A. 2A:53A-1, a successive tortfeasor is liable generally only for damages proximately caused by the independent tortious conduct succeeding the original event. See Restatement (Second) § 433A cmts. b, c (discussing limit on successor tortfeasor's liability when there are "[d]istinct harms" or "[s]uccessive injuries").  In other words, the issue may not be one of comparative fault as between the initial and successive tortfeasor; instead, it is the apportionment of damages between those injuries proximately caused by the initial tort and those proximately caused by the successive tort that matters.

We find no support for the Medical Defendants' general proposition that the CNA has no relevance to actions brought against successive tortfeasors. By its express terms, the CNA applies to "all negligence actions and strict liability actions in which the question of liability is in dispute[.]"  N.J.S.A. 2A:15-5.2(a).  Moreover, the CNA requires the factfinder to determine "the full value of the injured party's damages[,]" "regardless of any consideration of negligence or fault[.]"  N.J.S.A. 2A:15-5.2(a)(1).  The CNA only uses the term joint tortfeasors in discussing contribution, a right statutorily granted to joint tortfeasors by the JTCL, and, in the context of social host liability.  See

19

N.J.S.A. 2A:15-5.3(e) ("Any party who is compelled to pay more than his percentage share may seek contribution from the other joint tortfeasors."); N.J.S.A. 2A:15-5.8 (noting that when a "social host . . . is determined to be a joint tort-feasor, the social host or other party shall be responsible for no more than th[eir] percentage share of the damages . . . equal to the[ir] percentage of negligence").

The Court has acknowledged the relevance of the CNA's principles to situations involving successive tortfeasors. In Campione v. Soden, the plaintiff was a passenger in a car rear-ended by one driven by the defendant Jensen. 150 N.J. 163, 168 (1997). While the plaintiff was outside the car inspecting the damage, a second car rear-ended Jensen's car, crushing the plaintiff's legs and launching him into the air. Ibid.

> Although the cause of [the plaintiff's] leg injuries was undisputed, the source of his back, neck, periodontal, and psychological injuries was vigorously contested. Jensen[] argued that all of those injuries were caused by the second impact, while [the plaintiff] contended that the injuries could not be apportioned between the two accidents.
>
> [Id. at 170.]

While the trial court submitted special interrogatories to the jury, "[t]he verdict form failed to inquire about the percentage of fault attributable to the negligence of Jensen[] as a proximate cause of the second impact.

Additionally, <u>the form did not adequately inform the jury of its responsibility to attempt to allocate all damages between the two accidents</u>." <u>Id.</u> at 171 (emphasis added). The Court in <u>Campione</u> cited with approval <u>Loui v. Oakley</u>, 438 P.2d 393, 396–97 (Haw. 1968), for the proposition that a jury should determine "how much of the plaintiff's damages are attributable to each defendant's negligence[,]" and, if it "is unable to do so precisely, it may make a 'rough apportionment.'" <u>Id.</u> at 176. Importantly for our purposes, the Court said:

> Although the [CNA] does not specifically address the jury's responsibility in cases involving injuries sustained <u>in successive accidents</u>, we infer that the legislative objective would be achieved <u>by requiring juries to apportion damages between the successive accidents and to apportion fault among the parties responsible for each accident.</u>
>
> [<u>Id.</u> at 184 (emphasis added); <u>see also</u> <u>Kiss v. Jacob</u>, 138 N.J. 278, 284 (1994) (applying "the principles of comparative negligence" derived from the CNA to the jury award of causative fault and damages in a chain reaction collision).]

Our jurisprudence generally favors apportionment of damages. <u>Boryszewski v. Burke</u>, 380 N.J. Super. 361, 374 (App. Div. 2005). <u>See also</u> <u>Restatement (Second)</u> § 433A (1) ("Damages for harm are to be apportioned among two or more causes where (a) there are distinct harms . . . ."). The Court in

Campione explained the principles the trial court should employ in apportioning damages for two different "causative events":

> At the conclusion of a trial where allocation of damages among multiple tortfeasors is an issue, the trial court is to determine, as a matter of law, whether the jury is capable of apportioning damages. The absence of conclusive evidence concerning allocation of damages will not preclude apportionment by the jury, but will necessarily result in a less precise allocation than that afforded by a clearer record. If the court establishes as a matter of law that a jury would be incapable of apportioning damages, the court is to apportion damages equally among the various causative events. If the court concludes that the jury would be capable of apportioning damages, the jury should be instructed to do so.
>
> [150 N.J. at 184–85 (internal citations omitted).]

D.

We have long recognized that a party's status as a tortfeasor cannot be presumed simply because the plaintiff settled his or her claim against that party. See, e.g., Shatz v. TEC Tech. Adhesives, 174 N.J. Super. 135, 145 (App. Div. 1980) ("We see no reason why a settlement should reverse the ordinary rule that a person is not presumed to be culpable.") (citing Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc., 53 N.J. 157, 161 (1969)). As already noted, the CNA essentially codified this principle because after its enactment, a non-settling defendant was not entitled to any reduction in its

22

share of a plaintiff's total damages unless it proved the settling defendant's liability. See Green v. Gen. Motors Corp., 310 N.J. Super. 507, 545–47 (App. Div. 1998) (holding that the non-settling defendant, "by failing to have the jury assess the [settling defendant's] percentage of fault," was not entitled to credit for settlement monies paid); Johnson, 306 N.J. Super. at 437 (holding that "unless the settling defendant's percentage of liability is adjudicated at trial, there is simply no right in the adjudicated tortfeasors to a reduction of their own separately-allocated responsibility for the verdict"); Mort v. Besser Co., 287 N.J. Super. 423, 431–32 (App. Div. 1996) (noting that a non-settling defendant could shift a portion of liability to a settling defendant, but "that liability must be proven"); Young v. Latta, 233 N.J. Super. 520, 526 (App. Div. 1989) ("[I]f no issue of fact is properly presented as to the liability of the settling defendant, the fact finder cannot be asked, under N.J.S.A. 2A:15-5.2 or otherwise, to assess any proportionate liability against the settler."), aff'd, 123 N.J. 584 (1991).

However, the distinction between joint and successive tortfeasors compels us to reject plaintiff's blanket assertion that the CNA requires an adjudication of Juanito's fault before the appropriate quantum of damages could be determined if any Medical Defendant were found to be liable. Under principles of comparative responsibility embodied by the CNA, a successive

23

tortfeasor may, upon adequate proof, seek the factfinder's apportionment of damages between those proximately caused by its negligence and those caused by the initial tortfeasor, regardless of whether the initial tortfeasor was adjudged to have been negligent or whether the initial tortfeasor remains in the case. Campione, 150 N.J. at 184; see Schwarze v. Mulrooney, 291 N.J. Super. 530, 541 (App. Div. 1996) (collecting cases where, in various factual contexts, the burden of apportioning damages has been placed upon the defendant). The successive tortfeasor may seek apportionment of damages even if the initial tortfeasor is not adjudicated culpably negligent. Lewis, 237 N.J. Super. at 422–23.

Depending on the facts of the case, when successive torts are involved and one tortfeasor has settled before trial, issues of comparative fault may indeed become less significant. Had plaintiff not reached a settlement with Juanito's, and the case was tried against all defendants, the jury would have to decide the comparative fault of Jennifer and Juanito's as to the initial fall, and the quantum of damages associated with the fractured ankle. The Medical Defendants would unlikely be concerned about the jury's assessment of comparative fault for the fall, because even if the jury concluded Jennifer was not entitled to any recovery from Juanito's based on findings of comparative fault, her claim against the Medical Defendants would continue, and, if

successful, the jury would then assess the amount of damages proximately caused by their negligence.

Generally speaking, we think it is safe to assume that the focus of the Medical Defendants' defense in this case, and in most other litigation like this, will be on the issue of their own culpability, and, secondarily, the apportionment of damages between Jennifer's fall and the care they administered to her. The jury would first determine whether some or all of the Medical Defendants were negligent after Jennifer came under their care. If more than one Medical Defendant was found negligent and a proximate cause of Jennifer's subsequent injuries, the jury would first assess the comparative fault of those adjudicated tortfeasors and then assess the total amount of damages, apportioned between those caused by the fractured ankle and those caused by the medical negligence. In this regard, any Medical Defendants found liable would not have to prove Juanito's negligence in order to limit their potential exposure for proximately caused damages. Indeed, in a scenario such as this case, where the only defendants remaining are those alleged to have caused the subsequent injuries, the jury must apportion the total amount of damages between those caused by the initial injuries, and those caused by the Medical Defendants' negligence, so that the remaining defendants are not

25

obliged to pay for injuries they did not proximately cause. The relative fault of the party causing the initial injuries is irrelevant.

There certainly may be other scenarios where a non-settling defendant chooses to adduce proof of the settling initial tortfeasor's negligence. This may occur in cases where the non-settling defendant proves that the settling tortfeasor was negligent and its negligence was a proximate cause of the second "causative event." See, e.g., Campione, 150 N.J. at 170–71 (noting dispute as to which event caused which set of damages and the failure of the trial court's interrogatories to ask the jury to determine whether initial tortfeasor was a proximate cause of the second collision); see also Mahoney & Forte, New Jersey Personal Injury Recovery § 15:1-1 (2020) (noting possibility that "the party who caused the original accident would be a proximate cause of both the initial pain and suffering and the subsequent malpractice" (citing Juliano, 219 N.J. Super. at 187; Ciluffo, 146 N.J. Super. at 482)).

After the jury apportions the damages caused by each causative event, it determines the relative fault for each occurrence, and the court molds the verdict accordingly. The Court envisioned this two-step scenario in Campione, 150 N.J. at 184; see also Mahoney & Forte, § 15:1-1 (discussing this "two-step process" "when separate elements of damages are attributable to different, but related, events").

26

This two-step process has now been adopted by the most recent Restatement, which provides:

> (a) When damages for an injury can be divided by causation, the factfinder first divides them into their indivisible component parts and separately apportions liability for each indivisible component part . . . .
>
> (b) Damages can be divided by causation when the evidence provides a reasonable basis for the factfinder to determine:
>
>> (1) that any legally culpable conduct of a party or other relevant person to whom the fact-finder assigns a percentage of responsibility was a legal cause of less than the entire damages for which the plaintiff seeks recovery and
>>
>> (2) the amount of damages separately caused by that conduct.
>
> [Restatement (Third) § 26.][7]

"This process effectuates the basic policies of causation and comparative responsibility[, and] . . . does not make a . . . defendant responsible for damages that person did not cause . . . ." Id. at cmt. d. As the Restatement

---

[7] We limit our discussion and application of this section of the Restatement (Third) to factual circumstances where, as a matter of law, the jury is capable of apportioning the amount of total damages between each causative event. Campione, 150 N.J. at 484. The Restatement (Third) provides examples of "[e]mploying the two-step process" in various fact patterns. Id. at cmt. c.

(Third) has noted, "[c]ommentators [have] generally favor[ed] all or part of the Loui-Campione approach."  Id. at notes to cmt. h (citations omitted).

To summarize, the CNA applies to situations involving successive tortfeasors, but not in the same way it applies to joint tortfeasors.  In the context of successive torts, the CNA helps to achieve the "legislative objective" of comparative responsibility "by requiring juries to apportion damages between . . . successive [events] and to apportion fault amount the parties responsible for each [event]."  Campione, 150 N.J. at 184.  At trial, a non-settling successive tortfeasor may not only dispute its negligence and the quantum of damages it proximately caused, but it may also adduce proof as to the negligence of the settling tortfeasor, and whether the initial tortfeasor's negligence was a proximate cause of the second "causative event."  The burden of proof is on the non-settling defendant.  Young, 123 N.J. at 597.

We now consider the continued vitality of the Ciluffo pro tanto settlement credit.

## II.

The sole justification for a pro tanto credit provided by Ciluffo was to eliminate a windfall recovery through a duplication of damage awards to the plaintiff.  146 N.J. Super. at 483.  We consider the continued vitality of this rationale against the backdrop of what is a well-recognized phenomenon,

28

namely the "dramatic impact" of "the nearly universal adoption of comparative responsibility by American courts and legislatures[.]" Restatement (Third) § 1 cmt. a.

## A.

As some commentators have noted, prior to the passage of the JTCL and the CNA two decades later, New Jersey embraced "what might be termed an 'absolute morality' common law tort recovery system," whereby "a tort plaintiff needed to be absolutely blameless as a prerequisite to recovery." Mahoney & Forte, §1:1-1, p. 2; see also Renz v. Penn Cent. Corp., 87 N.J. 437, 450–57 (1981) (detailing history of common law of contributory negligence in New Jersey to 1973, and noting that "issues relating to liability in the personal injury tort field . . . must now be developed and applied in a manner consistent with the new doctrine, . . . [the CNA]"). "'[A]ny fault kept a claimant from recovering under the system,' whether that claimant was a plaintiff seeking compensation from a defendant or one joint tortfeasor looking for contribution from another." Dunn v. Praiss, 139 N.J. 564, 575 (1995) (quoting Ostrowski v. Azzara, 111 N.J. 429, 436 (1988)).

A common law corollary was the rule that a plaintiff's release of one joint tortfeasor automatically operated as a release of all who may have caused the injury, regardless of the intention of the parties or the sufficiency of the

29

plaintiff's recovery. The original rationale for this doctrine was that "the cause of action[,] which is one and indivisible, having been released, all persons otherwise liable thereto are consequently released." Adolph Gottscho, Inc. v. Am. Marking Corp., 18 N.J. 467, 470 (1955) (quoting Salmond, Torts (11th ed. 1953), 90). Our courts applied this "automatic release" doctrine not only to joint tortfeasors, but also to successive tortfeasors in situations similar to the facts in this case. See Knutsen v. Brown, 93 N.J. Super. 522, 536 (Law. Div. 1966) (noting that "[t]he majority of early American cases . . . held that where plaintiff had released the original tortfeasor, he was barred from an action for malpractice against treating physicians"), aff'd, 96 N.J. Super. 229 (App. Div. 1967); Adams v. De Yoe, 11 N.J. Misc. 319, 320 (Sup. Ct. 1933) (applying doctrine to bar the plaintiff's claim against doctor who treated broken arm suffered in accident when party allegedly causing accident was released by settlement). "The one-settlement-releases-all rule may [have] be[en] the most widely and harshly criticized legal rule of all time." Restatement (Third) § 24 notes to cmt. b.

Changes developed. First, in Brandstein v. Ironbound Transp. Co., 112 N.J.L. 585 (E. & A. 1934), the court reasoned that when the plaintiff settled with one tortfeasor and executed a covenant not to sue instead of a release,

granting a pro tanto credit to a non-settling tortfeasor did not violate the common law prohibition on contribution. The court explained:

> It is urged that, inasmuch as there can be no division of responsibility and no enforced contribution as between joint tort-feasors, there can be no application of payments by one or more tortfeasors in diminution of the amount recoverable by suit from another joint tort-feasor. Such argument overlooks entirely the fundamental rule that a person damaged can receive but one satisfaction for his injury. If he has received from one joint wrongdoer satisfaction and executed a release, it is taken to be full satisfaction and releases all jointly liable for the injury. A covenant not to sue one joint tort-feasor does not release other joint tort-feasors. If less than full satisfaction has been received for a covenant not to sue, reason, as well as authority, require that an injured person recover from other joint tort-feasors who are liable for his damage, but that his recovery from all the persons charged with responsibility for his injury be limited to the amount of his damage. Justice and fair dealing commend such rule.
>
> [Id. at 593.]

In Daily, the Court observed that it was "modern and eminently just" to modify the common law "automatic release" doctrine with respect to successive torts. 28 N.J. at 383.[8] In Daily, the plaintiff filed suit in New York

---

[8]  The Court decided Breen v. Peck, 28 N.J. 351 (1958), the same day it decided Daily. In Breen, the Court modified the absolute release doctrine as applied to joint tortfeasors, holding "our State no longer recognizes the English

against the owner and driver of a truck (the accident defendants) responsible for injuries he suffered in a motor vehicle accident in Ohio. Id. at 375. He filed a suit in New Jersey against the doctors who provided him with subsequent medical care for his injuries. Id. at 375–76. The plaintiff settled his claim with the accident defendants and executed a formal release. Id. at 376.

Construing Ohio law, the trial judge granted the doctors' motion for summary judgment, concluding that the release barred the plaintiff's recovery, since his complaint alleged only an aggravation of the injuries caused by the accident, and the plaintiff could have recovered the full amount of damages from the accident defendants. Id. at 378–79. However, applying New Jersey law, the Court, rejected the automatic release rationale of Adams, and held:

> Where . . . the court is concerned not with a joint tort but with successive independent torts, it is even more evident that the release of the original tortfeasor may not rationally be given the effect of automatically releasing the successive tortfeasor who, though he has made no payment whatever towards satisfaction of the injury he wrongfully inflicted, seeks a windfall because of the compromise of the claim against the original tortfeasor.

---

(continued)
common-law rule which, in absolute terms, released all joint tortfeasors upon the release of one." Id. at 364.

[Id. at 383–84 (citations omitted).]

The Court concluded that the release did not bar the plaintiff's medical malpractice claim unless it "was actually intended to release the doctors, or . . . the amount paid by [the accident defendants] actually constituted full compensation for the plaintiff's claims against [the accident defendants] and the doctors or was accepted as such," in which case "the plaintiff may not fairly or equitably seek further recovery." Id. at 384.

While both Breen and Daily abrogated the automatic release rule, both assumed that a pro tanto credit would apply to reduce any damage award against the unreleased, non-settling defendants at trial. See Breen, 28 N.J. at 365–66 (noting in joint tortfeasor context that the defendant "would in any event receive a benefit from the partial payment of his co-wrongdoer[,] for it would ultimately be allowed as a credit on the claim against him"); Daily, 28 N.J. at 386 (noting in successive tortfeasor context that, if the plaintiff received "partial compensation" from the settling defendant for injuries attributed to the doctors, "the amount of the partial compensation will be credited against any sum otherwise recoverable by the plaintiff; in no event will there be duplicating compensation to the plaintiff or duplicating liability on the part of the defendants").

33

The Court's opinions in <u>Theobold v. Angelos</u>, 40 N.J. 295 (1963) (<u>Theobold I</u>), and <u>Theobold II</u>, 44 N.J. 228, significantly changed the settlement-credit landscape for joint tortfeasors.[9]  In that case, one defendant settled prior to trial for $1500 ($1500 settler) and another settled for $88,500 ($88,500 settler), for a total settlement of $90,000.  <u>Theobold I</u>, 40 N.J. at 298–99.  The jury had answered written interrogatories "calling for a specific finding" as to the negligence of the two settling defendants and "whether such negligence was a 'concurring and proximate cause of' plaintiffs' injuries."  <u>Id.</u> at 299.  The jury found that the $88,500 settler was negligent, the $1500 settler was not, the trial defendant was negligent, and the plaintiff's total damages were $65,000.  <u>Ibid.</u>  Thus, under the terms of the JTCL and prior to passage of the CNA, the $88,500 settler and the trial defendant were joint tortfeasors, but the $1500 settler was not a tortfeasor at all; therefore, the trial judge divided the verdict equally between the $88,500 settler and the trial defendant.  <u>Id.</u> at 300.  He then deemed one half of the judgment satisfied by the $88,500 settlement, deducted the $1500 settlement from the remaining $32,500 award and entered judgment against the trial defendant for $31,000.  <u>Ibid.</u>

---

[9]  The plaintiff's name is spelled differently in both cases.  From here on in, we adopt the spelling used in the first case.

The Court in <u>Theobold I</u> noted that adoption of the JTCL "did not change the fundamental doctrine that an injured person is entitled to receive full and fair compensation but once, regardless of the number of wrongdoers who participated in inflicting the damage." <u>Id.</u> at 302.  However, application of the statute "in certain situations where a plaintiff has made a partial settlement with less than all of the alleged tort-feasors without trial of his case, <u>may result in actual receipt of a lesser sum than that fixed by a jury as representing full compensation</u>." <u>Ibid.</u> (emphasis added).  The Court then posed a series of hypothetical outcomes from "[t]he other side of the coin," i.e., where the plaintiff settled for a greater sum than awarded by the jury at trial. <u>Id.</u> at 302–03.  Without resolving the issue, the Court reversed based on the judge's jury instructions, <u>id.</u> at 305–07, and remanded for a new trial as to damages only, leaving the issue of "the propriety of the allocation of the verdict among the various alleged tort[-]feasors" for the future. <u>Id.</u> at 308.

At the second trial, the jury awarded the plaintiff $165,000 in total damages. <u>Theobold II</u>, 44 N.J. at 231.  The judge split the verdict equally on a pro rata basis between the $88,500 settler and the trial defendant, applied a $1500 pro tanto credit, and entered judgment against the trial defendant for $81,000. <u>Id.</u> at 231–32.  Before the Court, the trial defendant argued that either:  (1) the total damages should be split pro rata between all three

35

defendants, leaving one $55,000 share left to be paid: or, (2), if a three-way pro rata split was not allowed, the trial defendant should receive a pro tanto credit of $90,000, i.e., all the settlement monies the plaintiff had received, leaving a judgment of $75,000, not $81,000, against it. Ibid.

The Court rejected both alternatives. As to the $1500 settler, the Court found no basis to consider him responsible for a pro rata share of the plaintiff's damages. Id. at 234–35. The Court noted that the JTCL "calls for an adjustment only if the payor was a party to the wrong[,]" and it "does not direct that credit be given if there is a settlement with one who is not in fact a tortfeasor." Id. at 235 (emphasis added). Although the plaintiff did not challenge on appeal the award of a pro tanto credit to the trial defendant for the monies paid by the $1500 settler who was adjudicated not negligent at trial, id. at 232, the Court in dicta cited Brandstein and approved application of the pro tanto credit to the trial defendant's share. Id. at 236.

However, "invok[ing] the rule that there may be but one satisfaction of a wrong[,]" the trial defendant argued that holding him responsible for $81,000 in damages resulted in a windfall to the plaintiff, who would receive a total of $171,000 in damages ($1500 + $88,500 + $81,000), even though the jury awarded only $165,000. Id. at 239. Justice Weintraub wrote:

The one-satisfaction rule is equitable in nature and was designed to prevent unjust enrichment. . . . [I]t probably came into being at a time when courts of law could not achieve contribution among co-obligors. While the rule remains useful as an instrument for a just result, the question is whether it should be invoked in a situation in which [the JTCL] applies.

Defendant's just liability under [JTCL], based on the equitable doctrine that equality is equity, is for a pro rata share. He . . . seeks to avoid part of his liability because a co-tortfeasor paid more than he had to under the law. If defendant can invoke the one-satisfaction rule, he will enrich himself to the extent of another's overpayment. Hence, as plaintiff correctly puts it, the question is whether it is the plaintiff or the defendant who should be "unjustly" enriched if there in fact is any "unjust" enrichment in this scene.

We think plaintiff has the better of the argument in terms of both fairness and utility.

As to fairness, it is difficult to know whether a tort claimant has received more than full satisfaction. There is no precise measure of the amount of wrong. Even if the trial is as to damages only, successive juries would rarely make the identical appraisal. Nor is there reason to suppose that a jury's evaluation of losses is more accurate than the evaluation made by the parties to the settlement.

[Id. at 239–40 (emphasis added) (citations omitted).]

Despite these statements, the Court nevertheless approved the application of a pro tanto settlement credit, even when the settling defendant was "not a party to" the wrong. Id. at 241.

A-4042-19T3

B.

After passage of the CNA, <u>Theobold II</u>'s award of a pro tanto credit based upon a plaintiff's settlement with a non-adjudicated <u>joint tortfeasor</u> is no longer viable. We first addressed the issue in <u>Rogers</u>, a case involving joint tortfeasors and decided five days after <u>Ciluffo</u>.

In <u>Rogers</u>, the settling defendant paid the plaintiffs $5000 in exchange for a covenant not to sue. 147 N.J. Super. at 275–76. The jury found no negligence on the settling defendant's part, 100% negligence on the remaining defendant's part, and total damages of $10,750. <u>Ibid.</u> "[R]elying solely" on <u>Theobold II</u>, the remaining defendant claimed entitlement to a pro tanto credit for the settlement monies received from the non-negligent settler. <u>Ibid.</u>

We noted first that in <u>Theobold II</u>, "[t]his <u>pro tanto</u> credit was not challenged . . . on appeal." <u>Id.</u> at 276. We rejected application of a pro tanto credit, observing that under the CNA, a plaintiff who "makes a particularly good bargain in settlement" with a tortfeasor who is ultimately assigned a small percentage of fault at trial, or with a party later found to be without liability entirely "will benefit by the excess amount." <u>Id.</u> at 277–78. We explained:

> This necessarily means that if the settling defendant is found [zero percent] negligent (as in the present case), <u>plaintiff will receive the settlement plus the full</u>

A-4042-19T3

verdict. Under previous law in New Jersey the pro tanto amount paid by a non[-]negligent settling defendant was deducted from the verdict as long as the amount deducted did not exceed the possible pro rata share. Of course, under the [CNA] only the percentage amount equal to the percentage of negligence attributable to the settling defendant is deducted, no matter what the size of the settlement. It follows that the potential for enrichment of plaintiff beyond the loss suffered has been increased. However, this is offset by the potential for a greater loss to plaintiff if he makes a low settlement. While ideally a claimant should not receive more than one satisfaction for a wrong, when the situation arises in which additional enrichment must necessarily flow to someone, the more just result is to have the person wronged receive the benefit and not a wrongdoer.

[Ibid. (citing Theobold II, 44 N.J. at 239–41) (emphasis added).]

In the context of joint tortfeasors, our caselaw has consistently followed Rogers' rationale, i.e., that the CNA eliminated pro tanto credits based on a plaintiff's settlement with another party, and the adjudicated tortfeasor was entitled to a "credit" — a reduction in any award of damages — only by application of the adjudicated percentage responsibility of other tortfeasors. See, e.g., Young, 123 N.J. at 591 (citing Rogers and holding that "[t]he non-settling defendant is not entitled to a credit if the plaintiff settles with a party found not to be a tortfeasor"); Johnson, 306 N.J. Super. at 436–37 (noting, "as Rogers pointed out, the comparative-negligence scheme differs from the

39

former [JTCL], as construed by [Theobold II], under which the non-settling defendants were entitled to a pro tanto credit for the proceeds of the settlement made by plaintiff with the settling defendant whose liability was never adjudicated").  Indeed, "[t]he rationale of Rogers . . . has been consistently reaffirmed and adhered to" and "the rule applies to every multiple defendant case in which a comparative negligence allocation among them is required to be made." Johnson, 306 N.J. Super. at 437 (emphasis added).

Because, as outlined above, common law concepts that limited a faultless plaintiff's full recovery of her damages have long been jettisoned, and because our jurisprudence has moved inexorably toward apportioning damages based on adjudicated fault, we see no principled reason for continuing the Ciluffo pro tanto credit formula simply because this case involves successive instead of joint tortfeasors.  As every case since Rogers has recognized, the CNA, which by its express terms does not apply solely to joint tortfeasors, reflected a legislative policy judgment that in turn reflected monumental changes in the common law.  While it remains important that a plaintiff "not receive more than one satisfaction for a wrong, when the situation arises in which additional enrichment must necessarily flow to someone, the more just result is to have the person wronged receive the benefit and not a wrongdoer." Rogers, 147 N.J. Super. at 278.

Indeed, with the exception of <u>Clark</u> and <u>Mitchell</u> — two cases that cite <u>Ciluffo</u> and ostensibly approve the pro tanto credit formula — the Medical Defendants point to no decisions that approve pro tanto settlement credits in any context other than alleged medical malpractice in the treatment of prior occurring injuries. We doubt that our courts intended to carve out such an exception to our general tort jurisprudence.[10] Moreover, a close reading of those two cases lend little support to the Medical Defendants' arguments that a potential pro tanto settlement credit should still apply.

In <u>Clark</u>, the plaintiff suffered serious injuries in an auto accident and later died from cardiac arrest after the medical defendants provided negligent

---

[10] The Court has recognized the continued vitality of pro tanto credits in the context of uninsured motorist claims brought pursuant to a personal automobile insurance policy. <u>Riccio v. Prudential Prop. & Cas. Ins. Co.</u>, 108 N.J. 493, 503–05 (1987). However, there the Court differentiated the public policy supporting the uninsured motorist coverage and noted, "The policy behind the [JTCL] and the [CNA], on the other hand, is quite different. It is one of equity among joint tortfeasors — that is, those responsible for injury to an innocent victim should share equally the burden of recompense." <u>Id.</u> at 504. <u>Accord</u> <u>Childs v. N.J. Mfrs. Ins. Co.</u>, 108 N.J. 506, 512–15 (1987). In <u>Gold v. Aetna Life & Casualty Insurance Co.</u>, we recognized the viability of the <u>Ciluffo</u> pro tanto settlement credit in a claim brought under the underinsured motorist provisions of a policy. 233 N.J. Super. 271, 277 (App. Div. 1989). Citing <u>Riccio</u>, we noted that "[i]f plaintiffs had brought a common law suit against these defendants, the outcome might be different[,]" but <u>Rogers</u> was inapplicable because "the deduction of settlement proceeds from any potential underinsured motorist benefits is consistent with the public policy underlying the availability of contracted UIM coverage." <u>Id.</u> at 278 n.3.

A-4042-19T3

treatment. 390 N.J. Super. at 112–13. The jury found the medical defendants were negligent and awarded the plaintiff's survivor $2 million in pain and suffering damages and $1 million in wrongful death pecuniary losses. Id. at 111. One of the points raised on the medical defendants' appeal was that the trial judge failed to charge in accordance with Ciluffo regarding the plaintiff's settlement of more than $700,000 with the driver involved in the accident, who was never a party to the suit. Id. at 119.

"[I]nstead of asking the jury to determine total damages and the malpractice damages, the judge instructed the jury to determine what damages flowed from the malpractice and what damages were caused by the initial accident. Therefore, the two damage amounts together would constitute 'total damages.'" Id. at 120. The judge told the jury that the medical defendants would "receive a credit for any amount paid by the other driver in the settlement in excess of the amount you determine to be the damage sustained solely from the automobile accident." Ibid. The jury was not told the amount of the settlement and apportioned the damages as $2 million from the medical negligence and $1.5 million from the car accident. Id. at 120–21. We rejected the medical defendants' argument regarding the charge, finding "no essential difference between the process contemplated by Ciluffo and the process utilized here." Id. at 121.

42

Importantly, "because the amount of damages assigned by the jury for the accident far exceeded the settlement amount, there was no credit due defendants from the settlement." Ibid. And, we refused to consider as moot "whether Ciluffo applies at all to this case where the other driver was never sued[.]" Ibid. In short, the actual application of a pro tanto credit based on the plaintiff's prior settlement was not before us in Clark.

In Mitchell, the plaintiff sued the owner of a bar at which he was injured during a brawl and, in a separate lawsuit, the dentist who allegedly was negligent in treating the injuries to his mouth. 331 N.J. Super. at 448–49. On the day of trial, the plaintiff settled with the bar owner for $125,000, and, on the same day, moved to amend the complaint to alleged malpractice by the defendant dentist. Id. at 449. The trial court dismissed the suit against the dentist on the grounds that he had been substantially prejudiced by the plaintiff's failure "to comply with the then-applicable entire controversy doctrine and notice requirements of Rule 4:5-1(b)(2)[,]" but we disagreed and reversed. Id. at 449–55, 458.

The Mitchell defendant also argued that the plaintiff was "not entitled to proceed against him because the $125,000 settlement represented compensation for all injuries sustained[.]" Id. at 456. We disagreed and held that the plaintiff was "entitled to have a jury determine the issue of full

43

compensation, as well as that amount attributed to defendant's alleged malpractice." Id. at 458.

We cited the Ciluffo calculation with approval, noting that "to avoid duplicating compensation paid to [the] plaintiff, the successive tortfeasor may receive a credit for part or all of the payment made by the initial tortfeasor." Id. at 456. We noted, however, that, "[a]t oral argument, plaintiff's counsel conceded that plaintiff had been satisfied to the extent of the settlement with the Cherry Hill defendants and would not be entitled to collect additional damages, unless the verdict attributed to defendant's negligence exceeded $125,000." Ibid. (emphasis added). In short, the plaintiff in Mitchell never raised the issue we now address.

## III.

The developments in tort law since Ciluffo was decided regarding the apportionment of liability among multiple parties have been significant. It remains true that "[n]o party should be liable for harm it did not cause[.]" Restatement (Third) § 26 cmt. a. However, under the two-step process outlined in Campione, successive tortfeasors suffer no prejudice if the jury can properly apportion "divisible damages into their indivisible component parts." Id. at cmt. c. This certainly seems to be such a case, since the jury can easily understand that the Medical Defendants cannot be held liable for Jennifer's

fractured ankle, the pain and suffering that occurred as a result, and the need for surgery. We specifically anticipated the ability of a jury to apportion damages in such circumstances in Ciluffo, Mitchell, and Clark.

The only real issue is whether plaintiff or the Medical Defendants should benefit from the jury's assessment of the damages related solely to the fractured ankle when compared to the $1.15 million settlement plaintiff reached with Juanito's. Without a possible pro tanto credit, if the settlement is less than the jury's assessment, plaintiff reaps the result of what may have been a bad bargain, but the Medical Defendants are only responsible for the damages attributed to their negligence. If the settlement is more than the jury's assessment, plaintiff receives the benefit, but the Medical Defendants are still responsible only for what the jury has determined is the full measure of the damages attributed to their negligence. Such a result is fair and wholly consonant with the developments in our law since Ciluffo was decided, and we specifically disapprove of its holding regarding the award of a potential pro tanto credit in circumstances like these.

The orders under review are reversed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion. We do not

retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4042-19T3